**UNITED STATES of America, Appellee,**

v.

**Peter SABATINO, Defendant-Appellant.**

**No. 1069, Docket 73–1690.**

United States Court of Appeals, Second Circuit.

Submitted July 18, 1973.

Decided Oct. 5, 1973.

Michael C. Eberhardt, Sp. Atty., U. S. Dept. of Justice (Paul J. Curran, U. S. Atty., John W. Nields, Asst. U. S. Atty., on the brief), for appellee.

Stanley M. Meyer, Preminger, Meyer & Light, Brooklyn, N. Y., for defendant-appellant.

Before MOORE and OAKES, Circuit Judges, and GURFEIN,* District Judge.

GURFEIN, District Judge:

A jury found the appellant, Peter Sabatino, guilty of a violation of 18 U.S.C. § 1014.[1] The specific charge in the one

---

* Honorable Murray I. Gurfein, of the United States District Court for the Southern District of New York, sitting by designation.

1. § 1014.  Loan and credit applications generally; renewals and discounts; crop insurance

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the Reconstruction Finance Corporation, Farm Credit Administration, Fed-

count indictment was that Sabatino unlawfully made false statements of material facts upon an application for a loan for the purpose of influencing the action of the Bankers Trust Company, a bank the deposits of which were insured by the Federal Deposit Insurance Corporation ("F.D.I.C."), in that the appellant falsely stated that he had been employed for four years as the manager of the Haven Restaurant at a salary of $200 per week and that he had never had any judgments and the like filed against him. Appellant offered no defense. The Government proved the statements were false. Judge Weinfeld sentenced appellant to a term of imprisonment of four months and to a fine of $2,500.

Appellant contends 1) that the statute was not intended to cover auto loans such as this one and that, in so applying it, the appellant was deprived of due process of law; 2) that the court erred in excluding proof of repayment of the loan and holding it irrelevant; and 3) that the evidence was insufficient to establish guilt beyond a reasonable doubt.

## I

Appellant contends that Section 1014, by virtue of its history, must be limited to housing and farm loans, to the exclusion of auto loans. He contends it is a violation of due process to hold otherwise.

Appellant, who made a false application in material respects, has no standing to assert the unconstitutionality of the statute under which he was convicted. Dennis v. United States, 384 U.S. 855, 865–866, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); Kay v. United States, 303 U.S. 1, 6–7, 58 S.Ct. 468, 82 L.Ed. 607 (1938); United States v. Kapp, 302 U.S. 214, 218, 58 S.Ct. 182, 82 L.Ed. 205 (1937). The statute is, in any event, constitutional. See Westfall v. United States, 274 U.S. 256, 47 S.Ct. 629, 71 L.Ed. 1036 (1927); Hiatt v. United States, 4 F.2d 374, 377 (7 Cir. 1924), cert. denied, 268 U.S. 704, 45 S.Ct. 638, 69 L.Ed. 1167 (1925). But the appellant here contends not only that Congress lacked power to enact the statute as applied, but also that Congress did not intend the statute to apply to auto loans.

The question whether Congress intended an extension of federal criminal jurisdiction to this area of personal loans by state banks is not entirely free from doubt. The F.D.I.C. insures 13,669 banks, of which 9,063 are state banks. (Report of F.D.I.C. re Commercial and Mutual Savings Banks as of June 30, 1973, published by F.D.I.C.) The vast number of personal loans made by banks generally throughout the nation may be judged from the fact that a single large New York bank in the year 1972 alone is

eral Crop Insurance Corporation, Farmers' Home Corporation, the Secretary of Agriculture acting through the Farmers' Home Administration, any Federal intermediate credit bank, or any division, officer, or employee thereof, or of any corporation organized under sections 1131–1134m of Title 12, or of any regional agricultural credit corporation established pursuant to law, or of the National Agricultural Credit Corporation, a Federal Home Loan Bank, the Federal Home Loan Bank Board, the Home Owners' Loan Corporation, a Federal Savings and Loan Association, a Federal land bank, a joint-stock land bank, a Federal land bank association, a Federal Reserve bank, a small business investment company, a Federal credit union, an insured State-chartered credit union, any institution the accounts

of which are insured by the Federal Savings and Loan Insurance Corporation, any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, any member of the Federal Home Loan Bank System, the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or the Administrator of the National Credit Union Administration, upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

said to have made more than 28,000 such loans.

We have been told by the Supreme Court that extension of federal criminal jurisdiction will not be presumed, but must be clearly expressed in the statute. Erlenbaugh v. United States, 409 U.S. 239, 247, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972); United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). See United States v. Archer, 486 F.2d 670 (2 Cir. 1973).

As Mr. Justice Marshall said in *Bass*, supra,

"[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance. . . . In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." (404 U.S. at 349, 92 S.Ct. at 523, footnote omitted)

In *Erlenbaugh*, supra, the Court indicated that statutory construction should avoid producing situations in which relatively minor state offenses would be transformed into federal felonies. We can say here, as the court did in *Archer*, supra, 486 F.2d at 678: "The legislative history affords little indication of Congressional awareness of the enormous reach the statute could have if literally interpreted."

That may indeed be arguably true with respect to Section 1014. We are, nevertheless, constrained to find that Section 1014 applies to the crime charged for the following reasons:

1. Section 1014 is a code section enacted in the 1948 recodification of Title 18 of the United States Code. It is true, as appellant suggests, that the thirteen statutes which were codified into the single code section were, for the most part, statutes dealing with false statements in connection with farming and housing.[2] But two then existing statutes which were also included, were different, penalizing false statements for the purpose of influencing a) Federal Reserve Banks, former 12 U.S.C. § 596 and b) the Reconstruction Finance Corporation, former 15 U.S.C. § 616(a). Neither of these federal agencies was limited to lending for farm or home construction needs. By 1970, the codified section was, accordingly, not devoted exclusively to criminal coverage for false applications in the farming and home construction fields.

2. Although there was no Congressional discussion about the reason for including "any bank insured by the Federal Deposit Insurance Corporation" in Section 1014,[3] a look at existing statutes supports the view that the extension of federal criminal jurisdiction to such offenses against state banks was not a giant step. Embezzlement from banks which were members of the Federal Reserve System has been a federal crime since the Federal Reserve Act of 1913. 38 Stat. 260. The jurisdiction over

2. These thirteen provisions were: Title 7, United States Code, Sections 1026(a) and 1514(a), Title 12, United States Code, Sections 596, 981, 1122, 1123, 1138d(a), 1248, 1312, 1313, 1441(a), 1467(a), Title 15, United States Code, Section 616(a). See 1940 ed. of United States Code.

3. The amendment to 18 U.S.C. § 1014 was a minor part of a comprehensive act dealing with many phases of housing construction and rehabilitation, including home financing. Although the Report of the House Committee on Banking and Currency stated that the amendment of section 1014 would include "any bank insured by the Federal Deposit Insurance Corporation," H.R.Rep.No.91–1556, 91st Cong. 2nd Sess. 1970, U.S.Code Cong. and Admin.News, p. 5617, the House Bill (HR 19436) as enacted contained no such provision. The Senate Bill (S. 4368) contained no analogous criminal provisions whatever. The Conference added the provision relating to F.D.I.C. insured banks as well as other institutions and agencies, but without reported comment.

member banks, which included state banks, was clarified in 1918. 40 Stat. 972. Embezzlement from F.D.I.C. insured banks, which included state banks, was made a federal crime in 1935. Robbery of state banks insured by the F.D.I.C. has been a federal crime since 1935. 49 Stat. 720.

3. Although false statements to F.D.I.C. insured banks was not made a federal crime until the enactment of the Housing and Urban Development Act of 1970, Pub.L. 91–609, attention was called during the Congressional debates to the inclusion of "institutions insured by the Federal Savings and Loan Insurance Corporation," 116 Cong.Rec. 42630 (1970), which also includes state-chartered institutions. See 12 U.S.C. § 1726. The inclusion of such institutions tends to show a Congressional awareness that state-chartered institutions were being brought within the coverage of the section solely because they are federally insured.

■ We cannot, therefore, detract from the literal meaning of the statute which, in terms, is applicable to the crime charged. See Ex Parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944, 93 L.Ed. 1207 (1949); Packard Motor Car Co. v. NLRB, 330 U.S. 485, 492, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); United States v. American Trucking Associations, Inc., 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). We hold that the statute applies to all false statements made to influence the action of state banks insured by the F.D.I.C.

## II

■■ Such a statute, so apparently expansive of federal criminal jurisdiction, cannot be read broadly, however. It is a criminal statute, and "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." Rewis v. United States, supra, 401 U.S. at 812, 91 S.Ct. at 1059. But there is no ambiguity with respect to the specific intent required to be proved. The false statement which the statute prohibits shall be "for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation." To have "the purpose of influencing" such a bank, the defendant must have known that it was a bank that he intended to influence. We do not determine that he must know that the bank is insured by the F.D.I.C., but, at least, he must know that it is "a bank" to which he has made the false statement in his application for a loan.

The very able trial judge, with his usual care, charged precisely on scienter that "[t]he essence of the crime is the making of a false statement in an application for a loan for the purpose of influencing in any way the action of the bank from which the loan is sought." And he correctly charged as an essential element of the crime "that they were made for the purpose of influencing the Bankers Trust Company's action on the loan application."

■ The other contentions made by appellant lack merit. He contends that failure to prove reliance by the bank on the false statements is fatal to the prosecution case. That is not so. Speaking of a prosecution under a predecessor statute to 18 U.S.C. § 1014 (12 U.S.C. § 1467a), Chief Justice Hughes said: "It does not lie with one knowingly making false statements with intent to mislead the officials of the Corporation to say that the statements were not influential or the information not important." Kay v. United States, 303 U.S. 1, 5–6, 58 S.Ct. 468, 471, 82 L.Ed. 607, 611 (1938); United States v. Goberman, 458 F.2d 226 (3 Cir. 1972); Brilliant v. United States, 297 F.2d 385 (8 Cir.), cert. denied, 369 U.S. 871, 82 S.Ct. 1140, 8 L.Ed. 2d 275 (1962).

■ Appellant further contends that the trial court erred in excluding evidence of repayment of the loan. Proof

that an applicant did not intend to defraud the bank is irrelevant to whether he intended to influence the bank by false statements. United States v. Pesano, 293 F.2d 229 (2 Cir. 1961); United States v. Goberman, supra.

The argument that the evidence was insufficient to support the conviction is not frivolous, but we have concluded that there was enough evidence for a jury to find beyond a reasonable doubt that the appellant intended to influence the Bankers Trust Company to grant the loan.

Although the argument was not presented succinctly to Judge Weinfeld, nor, indeed, on this appeal, we have taken note of the circumstances that might support appellant's views. The appellant had previously financed an automobile through General Motors Acceptance Corporation ("GMAC"), concerning which there is no specific federal criminal statute. The purchase contract with the dealer did not refer to Bankers Trust Company. The loan application, while it was on a Bankers Trust Company form and signed by appellant, was filled in by the salesman. There was no proof of any oral conversation in which the appellant was told that this loan was not to be made by GMAC, as it had been earlier, but rather by Bankers Trust Company.

There was testimony, however, that the salesman showed the form, which was headed "Bankers Trust Company—Buyer's Credit Statement" to appellant who affixed his signature. We think that is enough to create an inference, which the jury could accept, that appellant knew he was making an application to the bank. See United States v. Maenzo, 475 F.2d 251 (7 Cir. 1973); United States v. Barbato, 471 F.2d 918 (1 Cir. 1973); United States v. Lee, 422 F.2d 1049 (5 Cir. 1970).

Affirmed.