**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Glen M. STODDART,
Defendant-Appellant.**

**No. 77–1543.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Feb. 16, 1978.

Decided April 27, 1978.

Rehearing Denied May 11, 1978.

Max D. Wheeler, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, with him on briefs), for plaintiff-appellee.

J. Thomas Bowen, Salt Lake City, Utah (Earl D. Tanner & Associates, Salt Lake City, Utah, with him on brief), for defendant-appellant.

Before BARRETT, BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The jury found defendant-appellant guilty of making a false statement to a bank insured by the Federal Deposit Insurance Corporation, FDIC, to influence action by the bank on a commitment, in violation of 18 U.S.C. § 1014. He was sentenced to two years probation and appeals.

On January 3, 1975, defendant opened a checking account in a branch of the First Security Bank of Salt Lake City, Utah, and deposited $50.00 in the account. Five days later, he telephoned a bank official and said that a $1,500 deposit made by him in another branch of the bank had not been credited to his account. He also said that he had purchased some carpeting and that a $1,390 check given by him in payment had been dishonored by the bank because of insufficient funds. His statements were repeated to another bank official who joined the telephone call. The bank then took care of the check for the carpeting and honored additional checks of the defendant. The result was an overdraft in defendant's checking account of $1,585.74.

The bank was unable to locate the claimed $1,500 deposit and called defendant who said that the check was issued by a credit union. It developed that the credit union had not issued the check and had closed defendant's account several months before the January 8 incident. Subsequently, the bank sued defendant and recovered in full with interest.

The relevant provisions of 18 U.S.C. § 1014 are:

"Whoever knowingly makes any false statement * * * for the purpose of influencing in any way the action of * * any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, * * * upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, * * * shall be fined not more than $5,000 or imprisoned not more than 2 years or both."

█ The gist of the charge is a false statement to influence bank action on a commitment. Defendant admits the statement but says it was not made to influence bank action on a "commitment." Section 1014 was a revision and compilation of a number of previous statutes. It does not define "commitment." Defendant argues that the word comes from a predecessor

statute, 12 U.S.C. § 596 (1946) (enacted by Act of June 19, 1934, ch. 653, § 3, 48 Stat. 1107), which prohibited a false statement to influence action of a Federal Reserve Bank on a "commitment." The defense argument based on legislative history of the Act of June 19, 1934, and regulations thereunder, does not impress us. We find no definition of commitment in that Act. Section 5, 48 Stat. 1108–1109, which is relied on by defendant, refers to "loans and commitments, or agreements to make loans." This language does not restrict "commitment" to an agreement to make a loan.

The Historical and Revision Notes to § 1014 say that the enumeration of affected conduct, which includes the word "commitment," "does not occur in any one of the original sections" and is "a composite of terms and transactions mentioned in each." Webster's New International Dictionary, 2 ed. (1960), in defining "commitment" says: "3a, A promise or pledge to do something; * * *." We believe that Congress had this common and accepted meaning in mind when it used the word. We find no intent to confine "commitment" to a promise to make a loan. The purpose of § 1014 was to cover all undertakings which might subject the FDIC insured bank to risk of loss. The defendant made the statement relative to the credit union check to influence the bank to give him credit for that check so that the carpet seller might receive payment. The fact that bank had no "commitment" to honor the check when defendant made the statement is immaterial. His false statement was intended to and did influence the bank which acted thereon. Section 1014 proscribes defendant's conduct.

Defendant argues that if his conduct is within the statute, it is unconstitutionally broad and vague as applied because it does not define "commitment." The test of impermissible vagueness is whether a person of ordinary intelligence is given fair notice that contemplated conduct is forbidden. *Palmer v. City of Euclid,* 402 U.S. 544, 545, 91 S.Ct. 1563, 29 L.Ed.2d 98, and *Rowan v. United States Post Office Dept.,* 397 U.S. 728, 740, 90 S.Ct. 1484, 25 L.Ed.2d 736.

We find no merit in the defense claim that the use of "commitment" did not give fair notice that a false statement to persuade the bank to give credit on the non-existent credit union check was within the purview of the statute. The indictment specifically stated the defendant's acts on which the § 1014 violation is based. The government proved the facts alleged. The failure of the statute to define "commitment" is no constitutional defect.

Defendant contends that the court erred in receiving evidence that checks, which defendant had written, were charged against the $1,500 credited to his account; that the bank had honored the checks; and that he had written the bank saying he would bring in papers relative to the check he claimed to have deposited. The objection is that reliance by the bank is irrelevant to the offense charged. Be that as it may, the evidence was relevant to show defendant's intent and was properly received.

The defense attack on the instructions has no merit. The requested instructions were either misstatements of the applicable law or were repetitious of instructions given. The instructions properly covered the elements of the offense and interpreted the statute in accordance with this opinion. The failure of the court to comply with Rule 30, F.R.Crim.P., which requires the court to inform counsel before argument of its proposed action on their requests, is inexcusable but does not require reversal. Counsel made no objections at the trial to the court's omission and does not claim that it adversely affected his jury argument in this comparatively simple case. In the circumstances, the defendant is in no position to complain of the Rule 30 violation. *Whitlock v. United States,* 10 Cir., 429 F.2d 942, 945–946.

Defendant urges that misconduct of the trial judge substantially prejudiced his rights. He objects to the judge's statements that (1) the prosecutor knew what he was doing; (2) he (the judge) had known the brother of the government's chief wit-

ness for many years; (3) the case was "simple"; and (4) there was "too much nonsense in this little two-bit lawsuit" (this last statement was made after the jury had retired). Defendant also insists that his counsel was chastised in the presence of the jury. Although we do not approve of the injudicious conduct, we are convinced that the matters mentioned were but minor incidents which did not affect the substantial rights of the defendant. See *United States v. Cardall,* 10 Cir., 550 F.2d 604, 606, cert. denied 434 U.S. 841, 98 S.Ct. 137, 54 L.Ed.2d 105, 1977; *United States v. Redmond,* 10 Cir., 546 F.2d 1386, 1390–1391, cert. applied for; and *Whitlock v. United States,* 10 Cir., 429 F.2d 942, 947 (all cases involving the same trial judge).

The indictment is dated August 26, 1975, but was not filed in court until December 4, 1975. Defendant was arraigned on January 16, 1976. Trial was held on January 14, 1977. A few days before the trial, defendant moved for dismissal on the grounds of violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and of the Sixth Amendment. The court refused to hear argument on the motion until all the evidence was in. The motion was renewed at the close of the government's case, and argued as a motion for judgment of acquittal. Neither the trial transcript nor the clerk's record shows any ruling by the court. The motion was renewed after the jury retired, and again the record shows no ruling by the court. The jury returned a guilty verdict and on January 21, 1977, defendant filed a written motion for judgment of acquittal, alleging among other things violation of the Speedy Trial Act and of the Sixth Amendment. A minute entry on the clerk's docket sheet recites that this motion was denied on June 6, 1977. Defendant was sentenced three days later.

■ Defendant was not tried within the time requirements of the Speedy Trial Act. It does not follow that the indictment should have been dismissed. The sanctions provided in 18 U.S.C. § 3162 are not effective until July 1, 1979. See 18 U.S.C. § 3163, and *United States v. Grismore,* 10

Cir., 564 F.2d 929, 932. Until then the time limits are merely directive. *United States v. Carpenter,* 9 Cir., 542 F.2d 1132, 1134.

■ The defendant's argument that he was denied his Sixth Amendment right to a speedy trial remains to be considered. In *United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468, a speedy trial case, the Court said that determination of the issue involves "a delicate judgment based on the circumstances of each case." *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, says that: "A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis" This statement is followed by an enumeration of four factors which should be assessed. They are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *United States v. Lovasco,* 431 U.S. 783, 796, 97 S.Ct. 2044, 52 L.Ed.2d 752, refers to *Marion* and says that whether preaccusation delay requires dismissal cannot be determined in the abstract. In *United States v. Hay,* 10 Cir., 527 F.2d 990, 996, cert. denied 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176, we said: "The test for determining when the right to a speedy trial has been violated is a balancing test * * *."

■ In the pending case the trial court made no effort to determine the reason for the delay or the prejudice, if any, to the defendant. The record shows the court gave no consideration to the claim of denial of speedy trial until over four months after the jury verdict. The court made no effort to balance the rights of the defendant and the actions of the prosecution. For all that the record shows, the court determined the issue in the abstract. The Supreme Court has said that this cannot be done. The court did not apply the balancing test which we have said to be necessary. See *United States v. Revada,* 10 Cir., 574 F.2d 1047, opinion filed this day. The duties and responsibilities of the trial court in this regard may not be ignored even though the proof of guilt is substantial. We do not approve of the cavalier treatment which the court gave of the speedy trial issue.

The case is remanded with directions that the trial court conduct a hearing and apply the tests mentioned above. The court shall then make appropriate findings and determine whether the defendant has been denied the speedy trial guaranteed by the Sixth Amendment. If he has been so denied, the action shall be dismissed. If not, the judgment of sentence shall stand. Either party shall have the right to appeal from the action taken by the trial court under this remand.