**UNITED STATES of America**

v.

**John EDWARDS.**

**Crim. No. 78–63.**

United States District Court, M. D. Pennsylvania.

Sept. 12, 1978.

As Amended Oct. 24, 1978.

---

S. John Cottone, U. S. Atty., Sal Cognetti, Jr., Asst. U. S. Atty., Scranton, Pa., for plaintiff.

Thomas Hanlon, Robert J. Nolan, Gelb & Myers, Scranton, Pa., for defendant.

## OPINION

MUIR, District Judge.

The indictment filed in the above-captioned case on August 9, 1978 charged the Defendant, John Edwards, with 50 counts of violating 18 U.S.C. § 1014. Specifically, the indictment charges that beginning on September 1, 1977 Edwards, who was an officer of R & D Investments also known as Edwards Brothers Packing Company, made materially false statements by presenting checks to the First National Bank of Carbondale and representing that there were sufficient funds in the account upon which the checks were drawn to cover the checks when he in fact knew that such funds did not exist. The 50 counts involve checks dated from September 2, 1977 to November 16, 1977 which range in amount from a low of $11,200 to a high of $148,206.45. The checks in counts 1 through 25 were drawn on the First National Bank of Carbondale. On August 30, 1978, Edwards filed a motion to dismiss the indictment accompanied by a brief. The United States filed a responsive brief on September 6, 1978. A reply brief was filed on September 11, 1978.

In his motion to dismiss the indictment, Edwards contends that the offenses charged in the indictment were not within the purview of 18 U.S.C. § 1014, that if that section covers the presentation of worthless checks it is unconstitutionally vague, that the indictment fails to allege all of the elements of a violation of § 1014, that the indictment may be the result of the improper use of Edwards' compelled testimony at the first meeting of creditors in a bankruptcy section, and that there is no basis for jurisdictional venue in the Middle District of Pennsylvania. Because the Court concludes that the offense with which Edwards is charged is not proscribed by 18 U.S.C. § 1014, there is no need to reach his other contentions.

18 U.S.C. § 1014 states in relevant part that it is unlawful for anyone knowingly to make a false statement for the purpose of influencing in any way the actions of any institution the accounts of which are insured by the Federal Deposit Insurance Corporation upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan or any change or extension of any of the same. Because the Court's conclusion that § 1014 does not prohibit the knowing passing of worthless checks is based both upon the language of the statute and its history, a brief review of that history is appropriate. A statute substantially similar to the current version of 18 U.S.C. § 1014 was enacted in 1948. See 62 Stat. 752 (1948). That statute, which was a consolidation of 13 other sections of the United States Code, namely 7 U.S.C. §§ 1026(a) & 1514(a), 12 U.S.C. §§ 596, 981, 1122, 1123, 1138d(a), 1248, 1312, 1313, 1441(a) & 1467(a) and 15 U.S.C. § 616(a) (1940), prohibited the making of a false statement in connection with the transactions enumerated in the current version of the statute but applied only to loan applications or other transactions entered into with a number of federal agencies including, inter alia, the Reconstruction Finance Corporation, the Farm Credit Administration, the Federal Crop Insurance Corporation, the Farmer's Home Corporation, the Federal Home Loan Bank, any federal savings and loan association, federal land bank, and any federal reserve bank. Each of the forerunner sections of § 1014 related specifically to one or more of the particular organizations in the 1948 version and to one or more of the transactions listed therein. The reviser's notes indicate that the enumeration of "application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment or loan" does not occur in any one of the 13 predecessor sections but that the enumeration represents a composite of terms and transactions mentioned somewhere in each

section. § 1014 was amended from time to time either to add other federal organizations to the list contained in the statute or to delete corporations which no longer existed. In 1970, the statute was further amended by the addition of federally insured banks to the organizations mentioned. No changes in the enumeration of transactions covered nor in the prohibition concerning a false statement have been made since § 1014 was originally enacted.

Edwards' attack on the proposition that § 1014 covers the presentation of worthless checks is twofold. First, he contends that presenting a check to a federally insured bank is not a "statement" which can be rendered false by the fact that the drawer of the check does not possess sufficient funds to cover the instrument but is an order to the drawee bank to pay the instrument according to its terms. Second, he contends that the presentation of a check for deposit is not an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan and therefore is a transaction which is not covered by the statute. The Court is in essential agreement with Edwards' first contention based upon the language of the statute and, in addition, agrees that Congress did not intend either when it enacted § 1014 in 1948 or when it amended it in 1970 to include the presentation of worthless checks as a transaction covered by the statute.

■ The language of § 1014 prohibits the making of a false statement for the purpose of influencing the action of one of the enumerated institutions. The United States contends that presenting a check for deposit is an implied representation by the depositor that he has funds sufficient to cover the check and that when he knows that he is not in possession of such funds, the representation is false. In *Indemnity Insurance Co. v. Pioneer Valley Savings Bank*, 343 F.2d 634 (8th Cir. 1965), a case cited by the United States in support of that contention, a depositor who presented a $35,000 draft to a bank stated to a bank officer in connection with the transaction that he had sufficient checks in his possession at that time to cover the draft and that he would deposit the checks in the bank the next day. Clearly, the transaction involved in that case was more than a simple presentation of a worthless check and involved the making of an actual statement. In *United Pacific Insurance Co. v. Idaho First National Bank*, 378 F.2d 62 (9th Cir. 1967), the Court indicated that if a course of dealing had been established between a bank and its customer whereby the bank would pay sight drafts issued by the customer in the regular course of his business, charge his account for the amount of drafts paid, and receive sufficient funds to cover the drafts, when certain drafts which were not issued in the ordinary course of business were paid by the bank and the customer failed to honor the drafts, an implied misrepresentation had been made by the customer. However, the Court is not persuaded that the reasoning in that case should be applied to the construction of a criminal statute. The Court is under an obligation to construe criminal statutes strictly and to resolve any ambiguities in favor of a criminal defendant. *See Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). At the very least, § 1014 is ambiguous with respect to whether it covers an implied misrepresentation purportedly made simply by the presentation of a worthless check without any other statement being made by the depositor concerning his ability to cover the check or whether he wishes the bank to consider that he has such funds.

There are more fundamental reasons, however, for refusing to view the presentation of a worthless check as a false statement. First, a check itself is not the type of statement which can be true or false. Edwards contends that a check is simply a direction to a bank to pay the instrument according to its terms. A direction can be neither true nor false. The Uniform Commercial Code defines a check as a draft drawn on a bank, payable on demand, payable to either order or bearer, signed by the drawer and containing an unconditional promise to pay a sum certain. *See* Act of April 6, 1953, P.L. 3, § 3–104, 12A Pa.Stat. Ann. § 3–104. As such, if a check is no

more than a promise to pay, it cannot be true or false. Only assertions of fact are capable of being true or untrue and it would seem that § 1014 is designed only to prohibit such false statements of fact in connection with, for example, an application for a loan.

Additionally, the 1948 version of § 1014 covered institutions which for the most part were engaged in the business of lending money to farmers and home owners. Of the originally enumerated organizations, only the Reconstruction Finance Corporation and the federal reserve banks performed any duties other than making farm and home loans. *See United States v. Sabatino*, 485 F.2d 540 (2d Cir. 1973). Neither of those two organizations resemble a federally insured bank because they do not accept checks for deposit from private customers. Therefore, when Congress enacted the original version of the statute, it clearly did not intend to cover the presentation of worthless checks. The 1970 amendment increased the jurisdictional scope of the statute by adding banks and savings and loan associations whose deposits were insured either by the Federal Savings and Loan Insurance Corporation or the Federal Deposit Insurance Corporation. However, nothing in the legislative history nor in the amendment to the statute indicates that by the addition of such banks Congress intended to make the presentation of worthless checks to those banks a federal crime. Although holding that making a false statement in an application for an automobile loan to a bank whose deposits were insured by the Federal Deposit Insurance Corporation was within § 1014 following the enactment of the 1970 amendment even though automobile loans had never been covered by that statute before, the United States Court of Appeals for the Second Circuit in *United States v. Sabatino*, 485 F.2d 540, 542 (2d Cir. 1973) stated that the question of whether Congress intended an extension of federal criminal jurisdiction to that area was not entirely free from doubt, citing statistics indicating that as of June 30, 1973 the Federal Deposit Insurance Corporation insured 13,-669 banks of which 9,063 were state banks. Clearly, an extremely large number of transactions which had not been federal crimes until 1970 were made so by the extension of the statute to applications for loans made by state banks. It is doubtful that Congress intended simply by the addition of federally insured banks to the statute to create federal jurisdiction over crimes which might be more prevalent than false statements made in loan applications to state banks and which have traditionally been a subject of state regulation. *See, e. g.*, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 4105. The Court does not believe that Congress intended to expand federal criminal jurisdiction to the extent suggested by the United States in this case.

Finally, had Congress intended to outlaw the passing of worthless checks to such banks, it could easily have said so in terms far more certain than those contained in § 1014. For example, the Pennsylvania law prohibiting the passing of worthless checks states that a person commits an offense if he issues or passes a check or similar sight order for the payment of money knowing that it will not be honored by the drawee. Therefore, the Court concludes that the passing of worthless checks even to a bank whose deposits are insured by the Federal Deposit Insurance Corporation does not constitute the making of a false statement within the contemplation of § 1014.

Edwards and the United States also dispute whether the passing of worthless checks is one of the enumerated transactions in § 1014. The Government argues that it constitutes an "advance" because in this situation the bank permitted Edwards to draw funds from his account which were credited to that account before the worthless checks which he deposited were presented to the drawee bank for payment. The Court is not convinced that this banking practice, which is not required by the Uniform Commercial Code but is solely within the bank's discretion, constitutes the type of "advance" contemplated in § 1014 for the reason that this particular transaction was not entered into by any of the corporations or organizations originally enumerated in the statute and that the

withdrawal of funds from an account prior to the payment of deposited checks is not an "advance" as that term is ordinarily used. However, the Court does not base its ruling on the fact that the presentation of worthless checks is not an enumerated transaction but rather that such presentation is not nor was it intended to be a false statement as defined in § 1014.

For the foregoing reasons, the Court will dismiss the indictment in the above-captioned case.

An appropriate order will be entered.

### ORDER

1. The indictment in the above-captioned case is dismissed.

2. The Clerk of Court shall inform counsel of the dispositive portion of this Order by telephone.