**UNITED STATES of America**

v.

**Michael SHER.**

**Crim. A. No. 80–147.**

United States District Court,
W. D. Pennsylvania.

Jan. 9, 1981.

Edward J. Schwabenland, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Michael W. Zurat, Pittsburgh, Pa., for defendant.

## MEMORANDUM

McCUNE, District Judge.

We consider defendant's motion to dismiss the indictment against him, on the ground that the statute which he is accused of violating does not proscribe his alleged conduct. Briefs have been filed and the motion is ready for adjudication.

The defendant was charged in a 49-count indictment with participating in a check-kiting scheme which defrauded a bank insured by the Federal Deposit Insurance Corporation of over $1,855,000.00, in violation of 18 U.S.C. §§ 1014 and 2. The Government alleges that on or about August 29, 1978, the defendant opened a checking account at Equibank in Pittsburgh in the name of M.S. Insurance Replacement, Inc., which defendant owned and operated. A few months later, defendant expanded his business to the Philadelphia area, and on January 4, 1979, opened a checking account at Philadelphia National Bank, also in the name of M.S. Insurance Replacement, Inc. Both banks granted defendant immediate credit on all deposits made.

The indictment charges that the check kiting scheme operated between January 11, 1979, and April 12, 1979. The Government alleges that defendant took checks payable to M.S. Insurance Replacement, Inc., drawn on the account of M.S. Insurance Replacement, Inc., at the Philadelphia bank, and deposited them in the Equibank office in Pittsburgh. At about the same time, defendant had checks for the same amount, drawn on his corporation's account in Pittsburgh and made payable to his corporation, deposited in the Philadelphia bank. The Government says that defendant obtained immediate credit for the amounts of the checks even though there were insufficient funds in the checking accounts. By covering worthless checks written on one account with worthless checks written on another account and taking advantage of the time lag necessary for clearance, see *United States v. Lea*, 618 F.2d 426, 430 n.4 (7th Cir. 1980), *North Carolina National Bank v. South Carolina National Bank*, 449 F.Supp. 616, 617 n.3 (D.S.C.1976), the Government alleges that defendant was able to keep the kite aloft.

The defendant has filed a motion to dismiss the indictment. He contends that § 1014 of Title 18 of the United States Code does not include check-kiting within its proscription. He therefore argues that he cannot be prosecuted under § 1014.

Section 1014 reads, in relevant part, as follows:

"Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, ... shall be fined not more than $5000 or imprisoned not more than two years, or both." [1]

---

1. The indictment alleges that Equibank's deposits were insured by the Federal Deposit In-surance Corporation at the time the alleged check-kiting scheme occurred.

This section is a consolidation of 13 predecessor sections containing similar provisions relating to false statements and representations or overvaluations of security. The terms "application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan" were added to represent a composite of the terms and transactions mentioned in the 13 predecessor sections.

Section 1014 does not explicitly mention checks, and there is nothing in the brief legislative history of the statute indicating whether a check-kiting scheme is contemplated by its terms. Two opinions address this question, but they contradict one another.

*United States v. Edwards*, 455 F.Supp. 1354 (M.D.Pa.1978), holds that § 1014 does not proscribe check-kiting. The district court based its holding on the fact that presenting a check is not a "statement" which can be rendered false by the fact that the drawer of the check does not possess sufficient funds to cover it. *Id.* at 1356. Rather, it is an order to the drawee bank to pay the check according to its terms, with the drawer promising to pay a sum certain. If a check is no more than a promise to pay, the court observed, then it can be neither true nor false. *Id.* at 1356–57.

Second, the court in *Edwards* doubted that presenting a check for deposit is an "application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan." It did not believe that the corporations and entities originally enumerated in § 1014 ever engaged in the sort of banking practices performed by Federal Savings and Loan Insurance Corporation and Federal Deposit Insurance Corporation banks, which were added to § 1014 in 1970. *Id.* at 1357–58. The court also questioned whether the withdrawal of funds from a checking account prior to the payment of deposited checks constituted an "advance" of money. *Id.* at 1358.

Finally, the court believed that § 1014 was ambiguous with respect to whether it included check-kiting schemes, absent any evidence of statements made by a defendant concerning his ability to cover the checks. *Id.* at 1356. The court said that if Congress had intended to outlaw the passing of worthless checks, it could easily have done so in terms more certain than those found in § 1014. *Id.* at 1357.

The second case, *United States v. Payne*, 602 F.2d 1215 (5th Cir. 1979), *cert. denied*, 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980), however, holds that § 1014 does encompass check-kiting. In so holding, the Court of Appeals for the Fifth Circuit criticized the reasoning of *Edwards*. It disagreed with the *Edwards* court's premise that the presentation of a check is not a statement, but rather an order to pay, finding this to be an oversimplified view of the transaction. In actuality, the Court of Appeals said, a check is an implied representation by the drawer that he has on deposit with the drawee bank, funds equivalent to the face amount of the check. *Id.* at 1218, *quoting* F. Whitney, *The Law of Modern Commercial Practices* § 341 (1965). From this, it followed that "the necessary implications which a check carries . . . are the legal equivalent of a representation or statement as to the value of the checks." *Id.* at 1218.

The Court of Appeals cleared other statutory language hurdles which the *Edwards* court said precluded prosecution for check-kiting under § 1014. It looked to the Uniform Commercial Code and other federal criminal statutes and concluded that a check is a "security" within the meaning of § 1014. *Id.* Hence, the presentation of a worthless check could stand for the overvaluation of a security as well. Furthermore, the court found this presentation to be "for the purpose of influencing in any way the action of . . . any bank . . . upon any advance . . . or loan." It cited many cases characterizing a bank's act in extending credit to a customer before the check clears, or permitting him to draw against an uncollected item, as a transaction in the nature of a loan. This, the court said, is the essence of check-kiting. *Id.* Therefore, § 1014 could properly be interpreted to cover check-kiting.

The Fifth Circuit also found support for its holding in the legislative history. Section 1014, as mentioned earlier, represents a consolidation of 13 other sections with similar provisions, which occurred in 1948. The court observed that most of these sections involved federal agencies making loans for farming or home construction, but two did not: those protecting Federal Reserve banks and the Reconstruction Finance Corporation. *Id.* at 1219. From 1949 through 1970, other entities were added, the most notable being the Federal Deposit Insurance Corporation, FDIC-insured banks, the Federal Savings and Loan Insurance Corporation, FSLIC-insured institutions, members of the Home Loan Bank System, and the Administrator for the National Credit Union Administration.

The court noted that

"[t]hus, by 1970 the codified section was not devoted exclusively to criminal coverage for false applications in the farming and home construction field. . . .

This development leads us to the inference, contrary to the court's conclusions in *Edwards*, that the intent of Congress was to incorporate in one codal section all of the business transactions of any of the specified agencies. The statute therefore proscribes not only fraudulent statements given in connection with farm or construction loan [*sic*] but 'all undertaking[s] which might subject the FDIC insured bank to risk of loss.' *United States v. Stoddart*, 10 Cir. 1978, 574 F.2d 1050, 1053."

*Id.*

The Third Circuit has not yet considered the question before us. We therefore may look to cases from other jurisdictions for guidance.

The logic of the Fifth Circuit's analysis of § 1014 in *Payne* is certainly persuasive, but we cannot ignore § 1014's bare language, which is ambiguous with respect to the cashing of checks. Criminal statutes are to be strictly construed, and ambiguities resolved in the defendant's favor. *United States v. Ortega*, 517 F.2d 1006, 1009 (3d Cir. 1975). We agree with

the *Edwards* court that if Congress had intended to protect the institutions enumerated in § 1014 from check-kiting schemes, it would have done so explicitly.

Of course, the rule that ambiguity should be resolved in favor of lenity is not to be used in complete disregard of the purpose of the legislature. *Scarborough v. United States*, 431 U.S. 563, 577, 97 S.Ct. 1963, 1970, 52 L.Ed.2d 582, 592 (1977). But the legislative history of § 1014 is scant, and we find nothing in it indicating that § 1014 was meant to include check-kiting in its prohibition. For example, the conference report accompanying the legislation which added FDIC-insured institutions and credit unions insured by the National Credit Union Share Insurance Fund to § 1014's protection states:

"The House bill contained a provision not in the Senate amendment providing criminal penalties for making false statements or reports *in connection with loans or other similar transactions involving an insured savings and loan association.* The conference substitute contains the House provision with an amendment applying the same penalties to financial institutions insured by the Federal Deposit Insurance Corporation and credit unions insured by the National Credit Union Share Insurance Fund."

Conf.Rep.No.91–1784, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Ad. News 5582, 5683–84 (emphasis added).

Similarly the legislative history of the 1964 amendment of § 1014, adding federal credit unions, states that the amendment

"would make it an offense under the United States Criminal Code for anyone knowingly to make a false statement or report or willfully overvalue any land, property, or security to influence the action of a Federal credit union in connection with any application, loan, *or the like.*"

S.Rep.No.1078, 88th Cong., 2d Sess., *reprinted in* [1964] U.S.Code Cong. & Ad.News 2519, 2520 (emphasis added).

The strongest evidence that § 1014 does not cover transactions outside of the borrowing and lending context appears at *id.* at 2522:

"Section 1014 is designed primarily to apply to borrowers from Federal agencies or federally chartered organizations. It is not, however, limited by its terms to borrowers and would seem also to apply to others, including for example, officers and employees of the agencies and institutions named."

We conclude from the above that there is no expressed Congressional intent to include check-kiting as criminal activity under § 1014. As we said, the *Payne* court's reasoning is persuasive. But we believe that when the Government's interpretation of a criminal statute is not readily ascertainable from a reading of the statute, it is the better course not to broaden its application beyond that which its context signifies.

We therefore grant the defendant's motion to dismiss the indictment.

An order follows.