**UNITED STATES of America, Appellant,**

v.

**SHER, Michael.**

**No. 81–1317.**

United States Court of Appeals, Third Circuit.

Oct. 6, 1981.

SUR PETITION FOR REHEARING

Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM and SLOVITER, Circuit Judges and RE,* Chief Judge.

* Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

The petition for rehearing filed by Appellant in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

ADAMS, JAMES HUNTER, III, GARTH and SLOVITER, Circuit Judges, would grant the petition for rehearing.

Circuit Judge ADAMS votes for rehearing and in support thereof makes the following statement:

On September 18, 1980, a grand jury returned a 49-count indictment charging Michael Sher with willfully overvaluing various securities, namely worthless checks, that he presented to a bank in Pittsburgh. The indictment charged that he had presented the checks to the bank for the purpose of influencing the bank's action in advancing money and extending credit to him. The charges against Sher stemmed from a check-kiting scheme he had engineered between January 4, 1979, and April 16, 1979. The government explained the factual basis for the charges as follows: Sher owned and operated a company in Pittsburgh for which he opened an account with the Equibank of Pittsburgh. He subsequently expanded his business to Philadelphia and opened an account for the company at the Philadelphia National Bank. Between January, 1979, and April, 1979, Sher took checks drawn on the Pittsburgh account and deposited them into the Philadelphia account, and vice versa. He obtained immediate credit in each bank even though there were insufficient funds in either account to cover the checks. By covering worthless checks written on one account with worthless checks written on the other

account and taking advantage of the time lag necessary for clearance, Sher was able to keep the kite afloat. During the four-month period, more than $1,800,000 in worthless checks were deposited into each account.

The district court, 505 F.Supp. 858 granted Sher's motion to dismiss the indictment on the ground that the indictment did not state facts sufficient to constitute a violation of 18 U.S.C. § 1014 because Section 1014 does not specifically proscribe check kiting. A panel of this Court affirmed, 657 F.2d 28. Although the panel acknowledged that its decision was in conflict with the decision of the Fifth Circuit in *United States v. Payne*, 602 F.2d 1215 (5th Cir. 1979), *cert. denied*, 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980), it declined to accept the reasoning of that court and instead affirmed on the basis of the district court's opinion.

18 U.S.C. § 1014 reads, in pertinent part, as follows:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action . . . of any bank the deposits of which are insured by the Federal Deposit Insurance Corporation . . . upon any application, advance, commitment, or loan, or any change or extension of any of the same . . . shall be fined not more than $5,000 or imprisoned not more than two years, or both.

Section 1014 is an important part of the statutory scheme that protects federally insured institutions against financial fraud. The statute is written broadly, and, as this Court noted recently in *United States v. Pinto*, 646 F.2d 833, 838 (3d Cir. 1981), the statute "was intended to maintain the vitality of the FDIC insurance program . . . and to 'cover all undertakings which might subject the FDIC insured bank to risk of loss'" (quoting *United States v. Stoddart*, 574 F.2d 1050, 1053 (10th Cir. 1978). Although most convictions under Section 1014 involve false representations made on loan applications, in *Pinto* we noted that the language and the purposes of the statute extend beyond that context.

A check kiting scheme such as the one charged in this case contains precisely the same dangers to federally insured institutions as a scheme involving false representations on loan applications: the check kiting scheme involves representations that the checks presented for deposit are supported by adequate funds; the representations are false; and they result in the advance of credit by the bank that honors the checks. As we held in *Pinto*, an extension of credit or an "advance" is a transaction falling within Section 1014, and the statute should not be read more restrictively than its language would permit.

The only other court of appeals to discuss this issue is the Fifth Circuit. That court has squarely held that a check kiting scheme falls within the reach of Section 1014. *United States v. Payne*, 602 F.2d 1215, 1216 (5th Cir. 1979), *cert. denied*, 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980). In *Payne*, the Fifth Circuit held that a check is a "security" within the meaning of Section 1014, and that a check that is not supported by sufficient funds on deposit is "overvalued" within the meaning of the statute. Although Section 1014 does not contain a definition of "security," that term is specifically defined in 18 U.S.C. § 2311 to include "any . . . check." Likewise, a government check has been defined as a "security" under 18 U.S.C. § 3056. *See Rogers v. United States*, 330 F.2d 535, 539 (5th Cir.), *cert. denied*, 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964). There would appear to be no reason to give the term a more limited interpretation in Section 1014. Moreover, a kited check is "overvalued" because it is represented to be worth its face value, when in fact it is worthless, since it is not supported by funds on deposit in the account on which the check is drawn. Therefore, as *Payne* held, a check kiting scheme falls within the general purposes of the statute—to protect federally insured institutions from fraudulent schemes designed to obtain advances and extensions of credit—and it would appear to satisfy the plain language of the statute. Absent any clear indication in the legislative history that check kiting schemes were *not* intend-

ed to be covered by Section 1014, there would appear to be no basis for reading the Section restrictively so as to eliminate such schemes from coverage. See *United States v. Turkette*, —— U.S. ——, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Because the panel opinion in this case conflicts with the approach to Section 1014 taken in a recent decision by this Court (*United States v. Pinto, supra*); because it conflicts with the position taken·by another circuit (*United States v. Payne*); and because it involves a significant interpretation of an important federal criminal statute, I believe the Court should rehear the case in banc.

GARTH, Circuit Judge, also votes for rehearing and joins in this statement.

JAMES HUNTER, III and SLOVITER, Circuit Judges likewise would vote for rehearing in banc.