UNITED STATES of America, Plaintiff,

v.

William L. COOPER, Defendant.

No. 96–1906M.

United States District Court,
D. Colorado.

Dec. 19, 1996.

Howard Diamond, Special Asst. U.S. Atty., Fort Carson, CO, for U.S.

Vaugh McClain, Canon City, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER is before the Court on the motion to dismiss filed by William L. Cooper (Defendant). An evidentiary hearing was held on December 5, 1996. The Court received testimony from witnesses Charles Burd and Terrence Baxter, as well as argument from counsel. The Court then took the motion under advisement. Further argument will be waived.

### I.

In June, 1996, violation notices were issued to Defendant.[1] These violation notices alleged that Defendant had violated 43 C.F.R. § 8372.0–7(a) and 36 C.F.R. § 261.10(c), by knowingly participating in a commercial operation without a permit. The alleged offenses occurred on or about October 24, 1992.

Defendant has moved for dismissal on the basis that he cannot find an essential defense witness, Michael C. Gillis. Defendant has argued that he has been denied due process of law due to the delay in bringing charges against him and that he has suffered prejudice through the loss of his witness. Defendant alleges that this delay was done to harass him or to gain a tactical advantage for the prosecution.

At the evidentiary hearing, Plaintiff and Defendant entered into a stipulation that Defendant had suffered actual prejudice in the loss of his witness Michael C. Gillis. It was stipulated also that the present whereabouts of Mr. Gillis are unknown.

Defendant then called two witnesses. The first witness was Charles Burd, a law enforcement officer for the United States For-

1. The violation notice has been superseded as a charging document by an information that was filed on September 4, 1996 and by a superseding information filed on December 4, 1996.

est Service (USFS). The second witness was Terrence Baxter, a ranger for the USFS.

Mr. Burd testified that the USFS and other agencies were involved from 1992 through 1996 in the investigation of commercial outfitters who set-up hunting trips onto federal property without obtaining necessary permits. Mr. Burd was working in an undercover capacity in October, 1992 when he went on a elk hunt with Defendant. That hunt went onto federal property under the control of the Bureau of Land Management (BLM) and USFS. The hunt was led by Defendant. The contracts for the hunt listed Mega–Buck Outfitters as the company responsible for the hunt.[2] *See,* Exhibit A. [Editor's Note: Exhibit not included for purposes of publication.]

Mr. Burd testified that the hunt took place in the area of Coaldale, Colorado. This witness indicated that the Coaldale area was a focal point for these investigations because of problems with outfitters not obtaining permits. Defendant was the guide for the hunt. Mr. Burd testified that the signature of Mr. Gillis appeared on the front of his contract.

Mr. Burd testified that he was not involved in all investigations and was unaware of details as to other hunts. Mr. Burd indicated that he was not aware of any further investigations being undertaken as to this Defendant after the 1992 hunt.

Mr. Burd testified further that the file involving Defendant was referred to him in late 1995. Prior to that, a different law enforcement agent had been handling the case. That agent apparently was transferred, and Mr. Burd assumed responsibility as the case agent. Mr. Burd indicated that the decision was made in early Summer, 1996 to charge Defendant. Shortly thereafter the violation notices were issued. The decision to charge also was based upon a concern about the running of the statute of limita-

tions and the fact that all investigations were being concluded on other outfitters.

Mr. Burd indicated that he had never spoken to Mr. Gillis and had no idea as to his whereabouts. Mr. Burd understood that Defendant was a partner with Mr. Gillis in the business Mega–Buck Outfitters.

Terrence Baxter is a ranger for the USFS. He testified that he was aware of on-going investigations as to outfitters operating in the Coaldale area. He was unaware of any undercover investigation dealing with Defendant after 1992.

Mr. Baxter testified that he was aware that the filing of charges against any outfitter who operated in the Coaldale area would have alerted others that undercover operations were on-going. Mr. Baxter testified that he patrolled on government land during the period 1992–96, but had not contacted any hunters who indicated that they had been involved in a hunt with Defendant.

Neither side presented any evidence as to the attempts made to find Mr. Gillis. Counsel for Plaintiff stated that efforts were being made to find Mr. Gillis. Defendant did not offer any testimony or proffer as to what efforts had been undertaken to find Gillis.[3]

## II.

■ Defendant's motion to dismiss is premised on a perceived denial of due process. Defendant has argued that he has been prejudiced by the loss of a witness and that the prosecution has gained a tactical advantage. Defendant relies upon the Tenth Circuit's decisions in *United States v. Francisco,* 575 F.2d 815 (10th Cir.1978), *United States v. Allen,* 554 F.2d 398 (10th Cir.1977), and *United States v. Merrick,* 464 F.2d 1087 (10th Cir.1972)..

■ The United States Supreme Court has held that the right to a speedy trial, as guaranteed by the Sixth Amendment, does

---

**2.** In addition to Mr. Burd, another government law enforcement officer working in an undercover capacity was on the hunt and signed a contract with Mega–Buck Outfitters.

**3.** Defendant also did not offer any indication as to what Mr. Gillis' testimony would be, though it appeared that the testimony might relate to rep-

resentations given to Defendant concerning status of permits. From the evidence presented, it would appear that Mr. Gillis might still face criminal prosecution, as the statute of limitations has not run on charges that could be brought against him.

not arise until a defendant is actually charged. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). A defendant may suffer a denial of due process if there is an unreasonable delay between the time of the offense and the filing of charges, provided that a defendant can show that he suffered actual prejudice. *United States v. Marion, supra.*

In *United States v. Francisco,* 575 F.2d 815 (10th Cir.1978), the Tenth Circuit was presented with the issue of unreasonable delay. There had been in that case a preindictment delay of approximately fifteen months. The court held that the defendant had failed to show an ulterior motive on the part of the prosecution or that actual prejudice had occurred.

In *United States v. Comosona,* 614 F.2d 695 (10th Cir.1980), the Tenth Circuit was faced with the same issue of unreasonable preindictment delay. The Tenth Circuit noted:

The Due Process clause of the Fifth Amendment to the United States Constitution has been interpreted to require dismissal of an indictment where a defendant is able to demonstrate that delay in charging him with a particular crime was the product of deliberate action by law enforcement personnel designed to gain a tactical advantage resulting in actual prejudice to the accused, thereby depriving him of his right to a fair trial. (cit. omitted) This Court has consistently held that it is not our function to "second-guess" the timing of the Government's indictment in the absence of proof of these elements. (cit. omitted).

In *United States v. Revada,* 574 F.2d 1047 (10th Cir.1978) and *United States v. Stoddart,* 574 F.2d 1050 (10th Cir.1978), we discussed the necessity of balancing the rights of a defendant and the actions of the prosecution in determining whether dismissal is appropriate for pre-indictment delay. In conducting this balancing test, certain elements must be considered. First, there must be demonstration of actual prejudice to the defendant resulting from the delay. Generally, such prejudice will take the form of either a loss of witnesses and/or physical evidence or the impairment of their effective use at trial. Second, the length of delay must be considered. Finally, the Government's reasons for delay must be carefully considered.

In performing this delicate balancing process, questions as to the burden of proof arise. Upon a prima facie showing of fact by a defendant that the delay in charging him has actually prejudiced his ability to defend, and that this delay was intentionally or purposely designed and pursued by the Government to gain some tactical advantage over or to harass him, the burden of going forward with the evidence shifts to the Government. Once the Government presents evidence that the delay was not improperly motivated or unjustified, the defendant then bears the ultimate burden of establishing the Government's due process violation by a preponderance of the evidence.

*Id.* at p. 696–697. In *Comosona,* the Tenth Circuit found that the defendant had failed to make a prima facie showing of any due process violation. The court refused to order dismissal of the indictment.

In the present case, the delay in issuing the violation notice was slightly less than four years. The parties further stipulated that Defendant had been prejudiced in that he has been unable to find Michael Gillis, a potential witness for the defense. What Defendant has failed to establish is that any action by the prosecution was pursued to "gain a tactical advantage or to harass him." The evidence indicates that a number of undercover investigations were on-going during the period of 1992–95 in the Coaldale area. The evidence reflects that charges were not filed against Defendant until all investigations were completed. Defendant has not established that the delay in filing of charges was done by the prosecution for any tactical advantage or harassment of Defendant.

IT IS HEREBY ORDERED that Defendant's motion to dismiss is denied.