UNITED STATES of America, Appellee,

v.

William THIBADEAU, Appellant.

No. 306, Docket 81–1263.

United States Court of Appeals, Second Circuit.

Argued Oct. 29, 1981.

Decided Jan. 27, 1982.

Hubert J. Santos, Hartford, Conn. (Clifford, Buckley & Santos, P. C., Hartford, Conn.), for appellant.

Richard N. Palmer, Asst. U. S. Atty., Dist. of Connecticut, Hartford, Conn., Richard Blumenthal, U. S. Atty., Dist. of Connecticut, New Haven, Conn., for appellee.

Before FEINBERG, Chief Judge, and FRIENDLY and PIERCE, Circuit Judges.*

FEINBERG, Chief Judge:

Defendant William Thibadeau appeals from a judgment of conviction in the United States District Court for the District of Connecticut, Jose A. Cabranes, J., following his plea of guilty to two counts of submitting false statements for the purpose of influencing the actions of a bank whose deposits were federally insured, in violation of 18 U.S.C. §§ 2 and 1014. With the consent of the government and the approval of the district court, Thibadeau reserved for review on appeal and now raises before us various claims rejected by the district court in denying his motions to dismiss the indictment. Appellant argues that he was denied his right to an impartial grand jury because of prosecutorial misconduct, that the indictment fails to allege an essential element of the crime charged, that the indictment is duplicitous, and that the documents containing the false statements do not fall within the scope of 18 U.S.C. § 1014 and, if they do, that the statute as applied is unconstitutionally vague. For reasons stated below, we agree with the district court's denial of the motions to dismiss, and we affirm the judgment of conviction.

## I. Facts

Since appellant pleaded guilty before trial, the district court record is skimpy. We rely here primarily on the statement of facts in the government's brief, which appellant apparently does not dispute.

Appellant William Thibadeau, together with co-defendant Norman Harris, owned Eastern Wrecker Sales, Inc. (EWS), a retail seller of tow trucks and similar vehicles. EWS and its subsidiary, Cambridge Manufacturing Corp. (CMCO), submitted retail installment agreements from its customers to The Guaranty Bank and Trust Company of Hartford (the Bank), which provided fi-

---

* When this appeal was heard, Judge Pierce was a District Judge for the Southern District of New York, sitting by designation. He was in-ducted as a judge of this court on November 30, 1981.

nancing. By late 1977 EWS had refinanced with the Bank almost $2.5 million in installment loans. Shortly thereafter, the Bank invited Thibadeau to join its Board of Directors. By the middle of 1978, the Bank had purchased approximately $8 million in EWS and CMCO retail installment agreements.

At the time the Bank approved a loan to an EWS customer, it paid EWS the sale price of the vehicle stated in the contract. For providing the Bank with a loan customer, EWS also received an agreed upon portion of the interest due on the loan; this amount was credited to EWS's "dealer reserve account," which the Bank required dealers to maintain at a level of three percent of its sales contracts to protect the Bank against defaulting customers. Ordinarily a dealer had only limited access to this account and withdrawals required the approval of a bank officer, but Thibadeau and Harris, with the aid of James Pitcher, an assistant vice-president at the Bank, were able to obtain substantial use of these funds. Thibadeau was able to withdraw as much as $40,000 twice a week from the account, and in less than one year withdrew more than a million dollars.

To perpetuate their scheme, Thibadeau and Harris generated a large number of contracts, many with persons who could not obtain credit from other sources and who signed blank contract forms. Some of these customers were deceived as to the length of the contracts and as to the interest rates being charged, believing them to be around 10 or 11 percent; the completed contracts EWS submitted to the Bank reflected interest rates as high as 26 percent. In many cases, the contracts were only cash loans; EWS had not, as it represented to the Bank, sold a vehicle or received a downpayment. The magnitude of this scheme is reflected by the number of separate contracts stated in the 98-count indictment, which covers 51 pages. The alleged loss to the Bank, and its successor, was approximately $4.5 million.

Norman Harris pleaded guilty to one count of violating 18 U.S.C. § 1014. James Pitcher was convicted by a jury of one count of aiding and abetting the submission of false loan documents in violation of 18 U.S.C. §§ 1014 and 2; his conviction was affirmed by this court in an unreported order. As already indicated, appellant Thibadeau pleaded guilty to two counts of the indictment, but reserved his right to this appeal.[1]

## II. *Discussion*

In this court, Thibadeau argues first that his right to an impartial grand jury was so prejudiced by prosecutorial misconduct that the indictment should be dismissed. Appellant claims that he was improperly required to invoke his fifth amendment privilege against self incrimination before the grand jury, and that he was prejudiced because the government called other witnesses who invoked various testimonial privileges before the grand jury. Thus, Pitcher and Harris asserted their fifth amendment privileges, and Samuel Tallow, an attorney for the corporation, and Josephine Thibadeau invoked the attorney-client and husband-wife privilege respectively. Appellant relies on Sections 3.5(b) and 3.6(e) of the ABA Standards for the Prosecution Function (ABA Standards) as the basis for dismissing the indictment. The former section prohibits a prosecutor from making statements and arguments in order to influence the grand jury "in a manner which would be impermissible at trial before a petit jury;" the latter prohibits a prosecutor from calling a witness "whose activities are the subject of the inquiry if the witness states in advance that if called he or she will exercise the constitutional privilege not to testify . . . ."

■ In considering these contentions of prosecutorial misconduct, we should first note that the remedy appellant seeks—dismissal of an indictment—is an extraordinary one. To dismiss an indictment because

---

1. Thibadeau received a sentence of 15 months imprisonment and a fine of $5,000 on count 15, and a term of imprisonment of two years and a fine of $5,000 on count 21, the sentences to run consecutively.

of misconduct means that even though a jury unanimously found the defendant guilty beyond a reasonable doubt—or as here, even though the defendant admitted his guilt—we should nevertheless void his conviction because the prosecution had made a misstep in obtaining a grand jury determination of probable cause. Justification for such action must be found not in any need for securing justice in the particular case, where the verdict supersedes the indictment, but rather in a desire to maintain proper prosecutorial standards generally. Hence, the sanction is reserved for "very limited and extreme circumstances," as we said in *United States v. Broward*, 594 F.2d 345, 351 (2d Cir.), cert. denied, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979).

■ Understandably, therefore, although much may be said in support of the ABA Standards, there are a number of decisions that have refused to dismiss indictments because of the conduct there condemned. See *Appeal of Angiulo*, 579 F.2d 104, 106–07 (1st Cir. 1978); *United States v. Wolfson*, 405 F.2d 779, 784–85 (2d Cir. 1968), cert. denied, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969); and *United States v. Fortunato*, 402 F.2d 79, 82 (2d Cir. 1968), cert. denied, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969). However, we need not consider this point in further detail because it is clear that the ABA Standards simply were not violated here. Appellant refused on fifth amendment grounds to answer the government's question about the location of corporate documents that he had agreed to supply to the grand jury but that had not been turned over because of an oversight by his counsel. Although appellant had agreed that he had no privilege with respect to a request for the production of corporate records, he declined to reply to the question, apparently because he misunderstood his counsel's advice. When the misunderstanding was resolved, appellant answered the question. This confusion between appellant and his counsel was fully apparent to the grand jury. The government, as the district court justifiably found, did not ask appellant questions that it had reason to believe would cause him to invoke his fifth amendment privilege.

■ With regard to other witnesses, the prosecutor apparently believed that Pitcher would testify before the grand jury, and the other three witnesses were called, as Thibadeau was, for the limited purpose of locating corporate records. The district court correctly found that the government did not "harass a witness or unnecessarily belabor a point in an effort to force a witness to invoke his privilege." Once a privilege was invoked, the government ceased questioning promptly.

■ Appellant's argument based upon Section 3.5(b) of the ABA Standards is that the prosecutor improperly asked two top bank officials whether they were aware of defendant's prior conviction for bankruptcy fraud. The one-sentence question asked of each witness was not followed up by the prosecutor in either case. Moreover, it is clear from a subsequent question of a grand juror that the jurors understood that the purpose of the question was to determine the credibility, judgment and involvement in the scheme of two potentially key government witnesses. Under the circumstances, if there was prejudice at all to appellant, it was not sufficient to warrant the extreme sanction of dismissing the indictment.

Appellant next argues that the indictment failed to allege an essential element of the crime. Appellant entered pleas of guilty to counts 15 and 21 of the indictment. Count 15 charges that four false statements were made on one document, a Bank purchase and loan agreement form. The false statements are as follows: that the vehicle purchased was new, when in fact it was not; that the vehicle was purchased from CMCO, when in fact it had not been purchased from CMCO; that a cash downpayment of $2,000 was made when in fact no downpayment was made; and that the purchase price was $6,950, when in fact that was not the purchase price. Count 21 charges that three false statements were made on a Bank purchase and loan agreement form: that the vehicle was purchased

from CMCO, when in fact it had not been purchased from CMCO; that a cash downpayment of $2,000 was made when in fact no downpayment was made; and that the purchase price was $9,500, when in fact that was not the purchase price.

Appellant has admitted that all of these statements were false, but argues that the representation regarding the purchase price on each document was not a "false statement," but was an overvaluation of the vehicle. Under the second clause of 18 U.S.C. § 1014, therefore, which is reproduced in relevant part in the margin,[2] the government had to charge that the overvaluation was willful, and not merely knowing. Since counts 15 and 21 of the indictment failed to include this allegation, they were defective and should have been dismissed on Thibadeau's motion.

We reject this argument as did the district court. The government was not required to allege that the worth of the vehicle was overvalued. The government could prove that the statement as to purchase price in each case was simply false, even though the purchase price of the vehicle may have been inflated and the overvaluation clause of the statute was violated as well. Moreover, each count also contained a charge of other false statements made "knowingly," which appellant admitted. It is not improper to charge one violation of 18 U.S.C. § 1014 when several false statements are made in one document. Cf. *United States v. Canas*, 595 F.2d 73, 78–79 (1st Cir. 1979) (several documents, but only one loan); *United States v. Sue*, 586 F.2d 70, 71 (8th Cir. 1978) ("the making of a number of false statements to a lending institution in a single document constitutes only one criminal violation under 18 U.S.C. § 1014"). Therefore, appellant had admitted sufficient facts to support a conviction on the two counts to which he pleaded guilty. See, e.g., *United States v. O'Neill*, 463 F.Supp. 1200, 1204–05 (E.D.Pa.1979).

Appellant also claims that the counts at issue not only omitted a key element of the crime, but also were duplicitous because they joined "knowing" false statements with "willful" overvaluations. We have already rejected the basic premise of this argument, since the government was not required to characterize the false statement as to purchase price as an overvaluation. Finally, appellant argues that the forms submitted by EWS to the Bank were security agreements, which are not covered by 18 U.S.C. § 1014. But the plain language of the forms makes it clear that the agreement is a contract for the sale of property and covers a "loan" for the "purchase" of a vehicle. The principle of lenity referred to in *United States v. Sabatino*, 485 F.2d 540, 544 (2d Cir. 1973), cert. denied, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974) and in *United States v. Edwards*, 455 F.Supp. 1354 (M.D.Pa.1978), relied on by appellant, simply does not apply when the statutory language to be construed so plainly applies to the transaction. That the agreement also grants a security interest to the seller does not remove the agreement from the coverage of the statute, nor render the latter unconstitutionally vague, as applied to these facts.

### III.

As the foregoing indicates, none of the issues raised by appellant is difficult to resolve, but there is one aspect of the appeal that deserves further discussion. We refer to the problems, recently alluded to by another panel of this court, raised by allowing defendants to plead guilty to a few counts of an indictment while reserving various points on appeal. See *United States v. Lace*, 669 F.2d 46, 53 n.5, 57 n.7 (2d Cir. 1982). In the case now before us, the indictment contained 98 counts; defendant pleaded guilty to two counts and

---

**2.** 18 U.S.C. § 1014 provides:

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation . . . shall be fined not more than $5,000 or imprisoned not more than two years, or both.

the government moved to dismiss the remaining 96 counts, which motion was granted. Also, the government agreed not to oppose defendant's motion to vacate a prior contempt order entered during the trial of co-defendant Pitcher. Appellant raises four issues before us, three of which attack the validity of the indictment.

The dangers, as well as the virtues, of conditional guilty pleas take on increased significance in light of the recent proposal of the Advisory Committee on the Federal Rules of Criminal Procedure to amend Criminal Rule 11 to provide that:

> (a)(2) *Conditional pleas.* With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to appeal from the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be afforded the opportunity to withdraw his plea.

This proposal would end the conflict that now exists in the circuits over the validity of the practice. E.g., compare *United States v. Burke,* 517 F.2d 377, 379 (2d Cir. 1975) and *United States v. Moskow,* 588 F.2d 882 (3d Cir. 1978) with *United States v. Brown,* 499 F.2d 829, 832 (7th Cir.), cert. denied, 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 640 (1974) and *United States. v. Sepe,* 474 F.2d 784, aff'd en banc, 486 F.2d 1044 (5th Cir. 1973); see also authorities collected in *United States v. DePoli,* 628 F.2d 779, 781 n.1 (2d Cir. 1980).

■ It is not our intention to retreat from our prior approval of conditional guilty pleas, as expressed in such opinions as *United States v. Burke,* supra; and *United States v. Faruolo,* 506 F.2d 490, 491 n.2 (2d Cir. 1974). We are fully aware that forcing a defendant who has lost a pre-trial motion to undergo a full trial in order to preserve the point of the motion for appellate review imposes a burden on the defendant and wastes prosecutorial and judicial resources. But we agree with the panel in *United States v. Lace,* 669 F.2d at 53 n.5, in "urging caution in accepting guilty

pleas that are subject to [numerous] conditions." In that case, although in a different context, the majority cautioned that when a defendant reserves for appeal more than one "pivotal" and "clear cut" issue, the trial judge should be satisfied "that the reserved issues are significant to the outcome of the case," id. And in concurring, Judge Newman pointed out that a conditional guilty plea "should not be a device to circumvent the harmless error rule," id. at 57 n.7. The Advisory Committee notes on proposed Rule 11(a)(2) make essentially the same point:

> The requirement of approval by the court is most appropriate, as it ensures, for example, that the defendant is not allowed to take an appeal on a matter which can only be fully developed by proceeding to trial.... As for consent by the government, it will ensure that conditional pleas will be allowed only when the decision of the court of appeals will dispose of the case either by allowing the plea to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence.

These comments, particularly the latter one, should remind us that the practice of conditional guilty pleas began in the type of case where the appellate decision would be dispositive "either by allowing the plea to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence." E.g., *Jaben v. United States,* 333 F.2d 535 (8th Cir. 1964), aff'd, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965) cited in *United States v. Doyle,* 348 F.2d 715 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965).

■ The advice of the panel in *Lace* to be cautious applies with equal, if not greater, force here, where three of the claims reserved directly attack the indictment. Of these, we have no concern over reservation of the claim of prosecutorial misconduct before the grand jury, an issue of constitutional dimension on which an adequate record has been developed. However, appellant's other two arguments could in some circumstances present issues on which a reviewing court could not intelligently rule without a full trial. As indicated, appellant

claimed in the district court that the indictment failed to allege an element of the crime (willfulness) and also that the indictment was therefore duplicitous. Although Judge Cabranes rejected these claims, he also made clear that he was willing to give a charge that would have eliminated the problems raised by the joining of several false statements in one count, as suggested in *United States v. Margiotta*, 646 F.2d 729, 732–34 (2d Cir. 1981); see also *United States v. O'Neill*, supra. But there will invariably be cases in which the judge had not so indicated, although he might well have done so at trial, if requested. Also, the evidence in this case might have been such that Judge Cabranes would have submitted to the jury only one false statement in each of the two counts at issue. In any event, in the face of claims of the sort made here, we see no reason why the judge taking a guilty plea cannot eliminate the problems altogether by focusing on the concededly valid portion of a count and taking the plea simply to that. This would not violate any of the policies that underlie the prohibition of duplicity. See *United States v. Murray*, 618 F.2d 892, 896–99 (2d Cir. 1980).

The judgment of conviction is affirmed.