**UNITED STATES of America, Appellee,**

v.

**Perry BURNS, Defendant-Appellant.**

**No. 1244, Docket 82–1016.**

United States Court of Appeals,
Second Circuit.

Argued June 8, 1982.

Decided July 21, 1982.

Lawrence Stern, New York City, for defendant-appellant.

Stephen Schlessinger, Asst. U. S. Atty., S. D. N. Y., New York City (John S. Martin, Jr., U. S. Atty., S. D. N. Y., Roanne L. Mann, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before FEINBERG, Chief Judge, CARDAMONE, Circuit Judge, and SAND,* District Judge.

FEINBERG, Chief Judge:

Defendant Perry Burns appeals from a judgment of conviction entered in January 1982 after he pleaded guilty to possession of heroin with intent to distribute in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2, in the United States District Court for the Southern District of

---

* Honorable Leonard B. Sand, United States District Judge for the Southern District of New York, sitting by designation.

New York before Gerard L. Goettel, J. With the government's consent and the district court's approval, appellant retained the right to appeal from Judge Goettel's adverse rulings on various pre-trial motions. The government in turn held in abeyance pending determination of the appeal the other count in the indictment, which charged appellant with conspiracy to distribute and possess heroin in violation of 21 U.S.C. § 846. Appellant was sentenced to 7½ years in prison to be followed by 10 years of special parole. He thereafter pursued this appeal. We affirm.

### I. Facts

According to evidence at a pre-trial suppression hearing in October 1981, the investigation leading to appellant's arrest began in April 1981 when James Heard, a paid informant for the Drug Enforcement Administration (DEA) in Chicago, told DEA agents that appellant was a substantial heroin distributor in New York and elsewhere. Because Heard stated that he could purchase narcotics from appellant, he was flown from Chicago to New York to work with Special Agent Ruth Higgs, who posed as a heroin purchaser for a long-time, Chicago-based narcotics dealer. On April 21, 1981, Heard arranged to meet appellant the following day at a bar in a local hotel. On April 22, Heard and Higgs met appellant as planned. Before the meeting, Heard had been searched for narcotics, but none were found on his person. After meeting appellant and being alone with him for a short time, Heard covertly gave Higgs a sample of heroin, for which he allegedly paid appellant $350. Higgs told appellant that if the heroin was of high quality, she would be interested in making a more substantial purchase. Subsequent analysis revealed that the sample was 55% pure heroin.

On June 1, 1981, Heard returned to New York to work with Special Agent Gerald Franciosa and DEA Group Supervisor Jeffrey Hall in pursuing further negotiations with appellant. Heard made various telephone calls to appellant, some of which were recorded, which culminated in a meeting arranged for the evening of June 2,

1981. Heard was to meet appellant and purchase a small packet of heroin for $150. Heard met appellant as planned and subsequently turned over a sample of 70% pure heroin, which he stated he had obtained from appellant. Franciosa could not recall whether he had searched Heard for narcotics before this meeting, however. Heard further stated that appellant said he had more heroin and instructed Heard to wait for a telephone call in his room.

Accompanied by the DEA surveillance team, Heard returned to his room, where he received a call from appellant about midnight. At Heard's request, this call was not recorded. Heard told Hall and Franciosa that appellant wanted him to go to the hotel bar, the place of the April transaction, where at approximately 1:00 a. m. he would meet a woman who would direct him to appellant. Appellant would then complete a sale of three ounces of heroin for $30,000. Because the DEA agents did not want to advance this large sum of money to Heard, they decided to arrest appellant at the scene of the proposed deal. They therefore told Heard that he should tell appellant's emissary when she came to the bar that Heard was afraid to consummate the transaction because he believed that he had been followed by the police.

At approximately 1:00 a. m. on June 3, 1981, DEA agents observed a Volvo parked near the hotel. A young woman, Charlene Smith, got out of the car, entered the hotel, and approached and spoke with Heard. She then left the hotel and returned to the Volvo. When the Volvo pulled away from the curb, DEA agents stopped it by ramming it with a back-up car. DEA agents thereupon arrested the driver, David Emanuel Fernandez, and his passengers, appellant and Smith. After pat-down searches, the agents discovered that Fernandez was carrying a weapon. Agents then searched the passenger compartment of the car and discovered a gun and a brown paper bag containing 70% pure heroin. After searching the interior of the Volvo, agents removed the keys from the ignition, opened the trunk, and found a loaded, sawed-off

shotgun and a brown bag containing additional shells.

Appellant, Fernandez and Smith were advised of their constitutional rights and taken to DEA headquarters for routine processing. A search of appellant's person at headquarters revealed that he was carrying $2,075 in cash and slips of paper with the telephone number of one meeting place and Heard's nickname written on them. After providing some background information, including information relevant to setting bail, appellant inquired about the possibility of making a deal whereby Fernandez would receive favorable treatment and Smith would be released outright in return for his cooperation. Franciosa repeated appellant's constitutional rights before speaking with him about making such a deal and explained that any such arrangement had to be approved by the United States Attorney's Office. At appellant's and Fernandez's request, they were permitted to meet privately. After their meeting, appellant told DEA agents that he knew a number of heroin dealers and that he was normally given approximately one week to pay his supplier. After making some other remarks about the heroin trade, appellant asked to speak with his attorney, and the interview was terminated.

Partly at his own request, appellant was lodged overnight at DEA headquarters, rather than at the Metropolitan Correctional Center, to prevent the fact of his arrest from becoming known, should he decide to cooperate. The following day, appellant was taken to the United States Attorney's Office for a bail interview. At the interview, an Assistant United States Attorney repeated appellant's rights and asked him questions about his background for purposes of setting bail. When the Assistant finished with background questions and began inquiring about the charges against appellant, he declined to answer and again asked to see a lawyer. Appellant was arraigned in the late afternoon.

## II. Pre-trial Rulings and Sentencing

After the seven-day evidentiary hearing at which the foregoing facts were presented, Judge Goettel ruled on appellant's pre-trial motions to suppress. Appellant sought to suppress the paper bag containing heroin and other evidence seized upon his arrest on the grounds that the agents lacked probable cause to arrest him and that the search violated the Fourth Amendment. He further sought to suppress his post-arrest statements on the grounds that he did not receive adequate Miranda warnings, was interrogated without an attorney present after he had requested one and was subjected to unwarranted pre-arraignment delay.[1] Judge Goettel denied these motions to suppress. However, he did grant appellant's motion to suppress the tape recordings of telephone conversations between himself and Heard on the ground that Heard had not consented to the recordings. After reviewing the entire presentation to the grand jury, Judge Goettel also denied appellant's motion to dismiss the indictment on the grounds that it was the product of willfully false, misleading testimony and that the conspiracy charge had been used as a pretext to introduce hearsay testimony.

By the time of the suppression hearing, Heard was no longer cooperating with the government and he appeared as a defense witness. With respect to questions about his purchase of heroin samples, he invoked his Fifth Amendment privilege over the government's objection. After in camera discussions with Heard and his attorney, Judge Goettel sustained Heard's invocation of the privilege. Appellant then moved for an order compelling the government to apply for immunity for Heard. Judge Goettel denied the motion. He also denied a similar request that the government seek immunity for Smith, with respect to whom an order of nolle prosequi had previously been entered in September 1981.

After the district court's rulings on these pre-trial motions, appellant entered a plea

---

1. The government argues to us that appellant's claim that he was improperly interrogated without the assistance of counsel was not presented to the trial court. We will address this argument below.

of guilty to the substantive count of the indictment and reserved his right to appeal from Judge Goettel's adverse rulings. As previously noted, the government held in abeyance the conspiracy count pending the outcome of this appeal. As part of the agreement, the government promised to take no position on sentencing except to respond to appellant's presentation. In his pre-sentencing memorandum and at the sentencing hearing, appellant attempted to establish that he was a rehabilitated, law-abiding individual and that he had engaged in heroin dealing as an aberrational response to a recent business failure. The government orally responded at the sentencing hearing that such an explanation was implausible in light of appellant's ability to obtain three ounces of 70% pure heroin on one week's credit. Appellant questioned whether these remarks violated the plea agreement but did not accept the government's invitation to rescind his plea. Judge Goettel then imposed a 7½-year term of imprisonment followed by 10 years of special parole.[2]

On appeal, appellant challenges the trial court's denial of his motions to suppress the evidence obtained upon his arrest and his post-arrest statements, its refusal to dismiss the indictment and its rejection of his attempts to compel immunity for witnesses. He further claims that his guilty plea should be rescinded or the case remanded for resentencing because the government's remarks at sentencing violated the plea agreement.

### III. Discussion

#### A. Conditional Guilty Pleas.

■ This case illustrates the difficulties presented by use of the conditional guilty plea when the defendant raises a barrage of claims on appeal. In *United States v. Lace*, 669 F.2d 46 (2d Cir. 1982), this court urged caution in accepting guilty pleas subject to a large number and variety of conditions. We stated that "[i]f a plea is tendered upon condition that more than one issue is reserved for appeal, the district court should satisfy itself that the reserved issues are significant to the outcome of the case." Id. at 53 n.5. In his concurrence, Judge Newman noted that "[t]he practice of pleading guilty with a reservation of right to appeal a pre-trial ruling has been used in the context of a single pre-trial issue that all sides recognized would be dispositive of the entire case." Id. at 57–58 n.7 (citations omitted). He went on to discuss the problems in assessing harmless error when a number of claims are raised on appeal and urged that "[p]leading guilty with a reservation of appellate rights should not be a device to circumvent the harmless error rule." Id. This court reiterated these concerns in *United States v. Thibadeau*, 671 F.2d 75, 79–80 (2d Cir. 1982).

Although the plea agreement here was entered before our decisions in *Lace* and *Thibadeau*, we again take this opportunity to suggest caution in the use of conditional guilty pleas in these circumstances. Indeed, a close examination of the rationale for allowing such pleas seems especially important in light of the current proposal by the Advisory Committee on the Federal Rules of Criminal Procedure to amend Fed. R.Crim.P. 11 to permit conditional guilty pleas. The Committee's proposal closely tracks this circuit's practice by requiring an express reservation with the approval of the district court and the consent of the government, but adds the requirement that the agreement be in writing. Advisory Committee on Criminal Rules, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Proposed Amendments to the Federal Rules of Criminal Procedure, Rule 11 (Preliminary Draft, Oct. 1981) (Committee Report).[3]

---

**2.** After appellant pleaded guilty, Fernandez was tried before Judge Goettel without a jury and was acquitted.

**3.** The proposed amendment to Rule 11 would introduce much-needed uniformity in the practice of accepting conditional guilty pleas. The circuits are currently split on the propriety of such pleas. See *United States v. DePoli*, 628 F.2d 779, 781 n.1 (2d Cir. 1980) (collecting cases); Note, Conditional Guilty Pleas, 93 Harv.L.Rev. 564, 565–66 n.10 (1980) (same). The Supreme Court has expressly left open the propriety of conditional guilty pleas. *United*

Originally, the conditional guilty plea was used in situations in which the pre-trial issue was clearly dispositive of the case. See *United States v. Doyle*, 348 F.2d 715, 719 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965), citing *Jaben v. United States*, 333 F.2d 535 (8th Cir. 1964), aff'd, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965). Most commentators have analyzed the propriety of conditional guilty pleas by assuming that only issues critical to disposing of the case would be raised on appeal. E.g., Note, Conditional Guilty Pleas, 93 Harv.L.Rev. 564, 576 n.54 (1980) (Harvard Note); Comment, Conditional Guilty Pleas: Post-Guilty Plea Appeal of Non-jurisdictional Issues, 26 U.C.L.A.L.Rev. 360, 379–82 (1978) (U.C.L.A. Comment). Yet, once this assumption is removed, the policy reasons underlying use of conditional guilty pleas are seriously undercut.

The courts have employed conditional guilty pleas as a means of conserving prosecutorial, defense and judicial resources, *United States v. Thibadeau*, 671 F.2d at 80, and of promoting the expeditious disposition of cases without diminishing the opportunity to assert constitutional rights, Committee Report, supra, at 21. These goals are accomplished by permitting the defendant to appeal an adverse pre-trial ruling without undergoing a full trial to preserve the point. Commentators have cited four major arguments against the use of such pleas: (1) conditional guilty pleas undermine finality in the criminal process; (2) they lead to a flood of appellate litigation; (3) they reduce the effectiveness of appellate review due to the absence of a full trial record; and (4) they force courts to decide constitutional questions that could otherwise be avoided under the "harmless error" doctrine. See, e.g., U.C.L.A. Comment, supra, at 375. But none of these arguments has been deemed to override the benefits of conditional guilty pleas when the issues preserved for appeal are adequately restricted. Id. at 375–82; Harvard Note, supra, at 572–77.

When defendants are allowed to raise on appeal a barrage of claims that are not clearly dispositive of the case, however, the balance of policy considerations is less clear. The practice is no longer as likely to serve the interests of judicial economy. Assuming that the probability of reversal on at least one issue increases as the number of issues appealed increases, broad-ranging conditional guilty pleas will be more likely to lead to an elaborate sequence of plea, appeal, trial and re-appeal. Such a sequence hardly conserves the judicial system's resources, for it adds an otherwise unnecessary step to the process. Moreover, the repeated incidence of such protracted proceedings will certainly not promote the expeditious disposition of criminal cases.

In addition, failure adequately to restrict the issues raised on appeal enhances the cogency of arguments against the use of conditional guilty pleas. The recurrence of protracted proceedings after acceptance of a guilty plea may seriously undercut the interest in achieving finality in the criminal process. If defendants are permitted to reserve for appeal a large number and variety of claims that are not particularly central to the case, the acceptance of such pleas is also more likely to lead to a flood of appellate litigation. Commentators have previously argued that in states in which conditional guilty pleas have been permitted, their use has not significantly increased the burden on appellate courts. Comment, 9 Hous.L.Rev. 305, 315–19 (1971). Yet, these states have by statute carefully limited the types of claims that can be raised on appeal. E.g., Cal.Penal Code § 1538.5(m) (West Supp. 1982) (search and seizure claims); N.Y.Crim.Proc.Law § 710.70(2) (McKinney 1971) (motions to suppress). Moreover, even with these careful restrictions, there has recently been state court criticism of the conditional guilty plea procedure as leading to excessive appellate litigation. Sachs, Appellate Review of Pre-trial Motions Following Conviction on a Plea of Guilty, 69 Ill.B.J. 480, 481–82 (1981). Hence, restrictive controls on conditional

*States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 667 n.1, 66 L.Ed.2d 564 (1981).

guilty pleas seem essential, lest the process lead to an inordinate number of frivolous appellate claims.

Moreover, the use of conditional guilty pleas that reserve an extensive number of issues for appeal may significantly undermine the effectiveness of appellate review and serve as a device to circumvent the "harmless error" doctrine, especially when the claims are not central to the disposition of the case. Without careful supervision of the number and variety of issues preserved for appeal, the use of conditional guilty pleas is likely to result in appellate presentation of issues that cannot be adequately reviewed without a full trial record. In a related vein, if the issues are not plainly dispositive of the case, an appellate court is likely to experience difficulty in determining whether any error that may have occurred should be deemed harmless. See *United States v. Cox*, 464 F.2d 937, 945 (6th Cir. 1972).

To avoid these problems, we urge the district courts in this circuit and the government to exercise vigilance in consenting to the reservation of issues for appeal when a defendant pleads guilty. The trial court clearly has a duty to ensure that the defendant reserves only issues that can be adequately reviewed without a full trial record, resolution of which by this court would "dispose of the case either by allowing the plea to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence." Committee Report, supra, at 23. Moreover, the views of the government as to whether an issue is "case dispositive" are most significant since it is "in a unique position" to make representations about the significance of evidence and is also most informed regarding the possibility of prejudice from delay. Id. at 23–24. Thus, few issues should be reserved in any given case. Any criminal defendant who is dissatisfied with the government's and district court's determinations can, of course, reserve his rights by refusing to plead guilty and proceeding to a trial, in which the government has the burden of proof.

B. The Merits.

We turn now to the merits of the issues reserved here, considering first those suppression issues that we believe were properly reserved on appeal. These include the motions to suppress evidence obtained upon appellant's arrest and incriminating post-arrest statements made to agents at DEA headquarters. These issues went to the heart of the government's evidence, and suppression of the challenged material would undoubtedly have been dispositive of the case.

■ Appellant challenges the admissibility of evidence obtained upon his arrest on the grounds that there was not probable cause to arrest him and that the warrantless search of the Volvo violated the Fourth Amendment. We agree with the district court's conclusion that there was probable cause to arrest appellant. Although tape recordings of certain conversations between appellant and Heard were suppressed, the DEA agents' testimony regarding what Heard told them about the conversations provided ample basis for finding probable cause to arrest appellant. Moreover, despite appellant's claims that Heard was not an informant of known reliability, the DEA agents were wholly justified in relying on his representations when he had previously provided apparently accurate information about appellant's activities. See *United States v. Canieso*, 470 F.2d 1224, 1231 (2d Cir. 1972). In fact, his past efforts had led to two apparently successful heroin transactions with appellant, which corroborated his reliability.

■ The search of the Volvo was also entirely proper under the Fourth Amendment. Once probable cause to arrest appellant was established, the passenger compartment and any containers in it could be searched incident to appellant's custodial arrest. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). The nature of the container and whether it was open or closed are immaterial under *Belton*. Id. & n.4. Hence, the heroin and handgun found in the car were admissible.

Although *Belton* expressly refused to decide whether its holding covered searches of an automobile trunk, id. n.4, we believe that the search of the trunk was permissible under the Supreme Court's recent decision in *United States v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In light of the information provided by Heard, the agents had probable cause to believe that the automobile contained contraband. The search of the passenger compartment only confirmed this belief. Under *Ross,* the agents were therefore empowered to search the trunk and all the containers within it, regardless of their nature. Id. at —— ——— ——, 102 S.Ct. at 2169–73, 72 L.Ed.2d at 589–595. Thus, the shotgun and shells were admissible evidence as well.

■ Appellant argues, however, that *Belton* and *Ross* should not be applied retroactively to the search at issue here.[4] We find this contention unpersuasive. In Fourth Amendment cases, the courts have focused on whether retroactive application to exclude evidence would serve the twin policies of protection of judicial integrity and deterrence of police misconduct. *United States v. Reda,* 563 F.2d 510, 512 (2d Cir. 1977), cert. denied, 435 U.S. 973, 98 S.Ct. 1617, 56 L.Ed.2d 65 (1978). Cases refusing to apply decisions retroactively have generally involved good faith searches by police officers that later became plainly unconstitutional under intervening Supreme Court decisions. *United States v. Peltier,* 422 U.S. 531, 541–42, 95 S.Ct. 2313, 2319–20, 45 L.Ed.2d 374 (1975); *United States v. Reda,* 563 F.2d at 512. Under such circumstances, retroactivity would neither deter police misconduct nor promote judicial integrity because the officers have reasonably relied on existing judicial precedent. *United States v. Peltier,* 422 U.S. at 537–39, 95 S.Ct. at 2317–18;

*United States v. Reda,* 563 F.2d at 511–12. Here, refusal to uphold searches later found constitutional would not serve the purposes underlying the exclusionary rule either. Because the Supreme Court has declared searches such as those involved here to be constitutional, no police misconduct has in fact occurred. Hence, there is no misbehavior to be deterred, and the interest in maintaining judicial integrity is not implicated, especially in light of the previously unsettled state of the case law in this area. We therefore apply the principles in *Belton* and *Ross* to uphold the searches here.[5]

■ Appellant next challenges the admissibility of his post-arrest statements to DEA agents on the ground that he received inadequate *Miranda* warnings. He claims that he was not informed that he had the right to have an attorney present during questioning. Instead, appellant was told, among other things, that he had a right to remain silent, that he had the right to an attorney and that if he was not able to afford a lawyer, one would be appointed for him. In *United States v. Lamia,* 429 F.2d 373, 376–77 (2d Cir.), cert. denied, 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970), this court held, under similar circumstances, that failure expressly to tell a defendant that he could have an attorney present during questioning did not render warnings constitutionally deficient when, taken as a whole, they made this right clear. The warnings given here were similar to those given in *Lamia.* Despite appellant's assertions to the contrary, *Lamia* remains good law in this circuit, and no intervening Supreme Court decision alters this conclusion. In fact, the Supreme Court recently cited *Lamia* when it stated that "[t]his Court has never indicated that the 'rigidity' of *Miran-*

4. Appellant's papers focused only on the propriety of retroactively applying *Belton,* for *Ross* was decided only two days before appellant filed his reply brief. We assume for purposes of this appeal, however, that appellant would challenge the retroactive application of *Ross* on similar grounds.

5. Because we find *Belton* and *Ross* dispositive, we need not reach the issue whether appellant, who did not own the car, had standing to chal-

lenge the search. (The district court did not address this standing question, either.) We also need not address the question whether the search of the trunk was justified because the car and evidence seized were subject to statutory forfeiture. See *United States v. Modica,* 663 F.2d 1173, 1177 (2d Cir. 1981) (per curiam), cert. denied, —— U.S. ——, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982).

*da* extends to the precise formulation of the warnings given a criminal defendant," *California v. Prysock*, 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696 (1981) (per curiam). Although we continue to adhere to *Lamia* and therefore must reject appellant's claim, we urge law enforcement officers to avoid such problems altogether by making explicit the right to have an attorney present during questioning, even when dealing with fairly sophisticated defendants, such as appellant.

■ More troublesome is a claim that we believe never should have been preserved for appeal. Appellant challenges the admissibility of statements made to an Assistant United States Attorney at a bail interview on the grounds that they were the product of unwarranted delay and were obtained in violation of *Miranda's* requirements because appellant was subjected to renewed interrogation without counsel present after requesting an attorney. Because we find the latter claim decisive, we need not reach the question of unwarranted delay. In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), a defendant was advised of his rights and agreed to submit to questioning in order to make a deal. Subsequently, however, he stated that he wanted an attorney before proceeding with the deal. The following morning, two detectives again gave the defendant his *Miranda* warnings and continued to interrogate him. The Court held that the statements obtained by the two detectives must be suppressed because "it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel," id. at 485, 101 S.Ct. 1885. See also *Fare v. Michael C.*, 442 U.S. 707, 717–19, 99 S.Ct. 2560, 2567–68, 61 L.Ed.2d 197 (1979).

Here, too, after answering some questions for the DEA agents, appellant requested an attorney, but one was not immediately provided. Instead, on the following day after providing renewed *Miranda* warnings, the Assistant United States Attorney recommenced questioning appellant. During the interview, appellant answered questions about his background but refused to respond to inquiries about the pending charges, again requesting an attorney. The attempt to interrogate appellant regarding the charges plainly violated the mandate of *Edwards*. The government responds, however, that appellant failed to raise this argument below and hence waived it, that the statements elicited by the Assistant United States Attorney were mere background pedigree information not covered by *Miranda*, and that failure to suppress the information was in any event harmless error.

■ Although appellant did not explicitly cite *Edwards* to the district court in challenging the admissibility of this evidence, we do not feel justified in finding that appellant waived this point under *United States v. Braunig*, 553 F.2d 777, 780 (2d Cir.), cert. denied, 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 277 (1977), or *United States v. Indiviglio*, 352 F.2d 276, 279–80 (2d Cir. 1965) (in banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). In the district court, appellant repeatedly asserted that once he requested an attorney, custodial interrogation should have ceased, and that he should have been immediately taken to a magistrate for arraignment. He argued that he was therefore denied his right to counsel. Under these circumstances, we will reach the merits of appellant's claim.

The government argues that the evidence obtained during appellant's bail interview with the Assistant United States Attorney was mere pedigree information that fell outside *Miranda's* scope. In *United States ex rel. Hines v. LaVallee*, 521 F.2d 1109 (2d Cir. 1975), cert. denied, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976), a state prisoner who had not received his *Miranda* warnings told an arresting officer that he had been married 11 years and had two children. The officer had only intended to make conversation by eliciting routine background information, but as it turned out, the victim testified that her assailant had told her precisely the same details about his family life. This court held that

although incriminatory, the information fell outside *Miranda*'s scope because it involved merely basic identification necessary for booking purposes. Id. at 1112–13. The court also added that failure to suppress the evidence was in any event harmless error in light of the overwhelming evidence against the defendant. Id. at 1113.

Appellant claims that certain information obtained at the bail interview, such as appellant's history of drug use, past record, and personal finances, cannot be characterized as mere pedigree. The government argues to the contrary, and it is true that this information would be relevant to the setting of bail. But it is equally true that some of appellant's statements could be incriminating at a trial, much more obviously so than those in *Hines*. For example, the Assistant obtained information about appellant's criminal record, his past use of drugs, his lack of steady employment and his ownership of various automobiles. The government's brief in this court properly characterizes the last two items as admissions, implying that they might have been used against appellant at trial.

Even assuming arguendo, however, that the questioning was improper, we must still assess whether failure to suppress the information was harmless error. Since we do not have the benefit of a full trial record, as did the court in *Hines*, we are thus faced with precisely the problems adverted to by Judge Newman in his concurrence in *Lace*, 669 F.2d at 57–58 n.7, and discussed above. Although the procedural stance of this case renders "harmless error" analysis difficult, we are aided by the knowledge that the evidence seized upon appellant's arrest and his highly incriminating post-arrest statements to DEA agents are admissible.[6] We feel confident that if the case had gone to trial with the government introducing the admissible evidence which was available to

it and the defendant offering no countervailing evidence, the erroneous admission of the additional evidence as to the bail questioning would be regarded as harmless error.

The question then presented is whether under such circumstances this appellate court can determine if appellant's decision to plead guilty would have been altered by the knowledge that some of the evidence obtained at the bail interview would be inadmissible. Several courts have considered the question and have held that an appellate court is not in a position to make such a determination. See *United States v. Weber*, 668 F.2d 552, 562–63 (1st Cir. 1981), and cases cited therein. While this may be true most of the time, we think that there are occasions when it is appropriate for an appellate court to resolve the issue. This is one such occasion, in view of the other evidence in the record and the apparent triviality of the evidence that we have assumed arguendo was inadmissible. In light of this overwhelming evidence of guilt, we feel confident beyond a reasonable doubt that the suppression of information obtained at the bail interview would not have altered appellant's decision to plead guilty and that failure to suppress this evidence was harmless error. Precisely because the evidence involved here was so tangential, however, we believe that this issue did not qualify as case dispositive and therefore should not have been preserved for appellate review for the reasons given above.

Appellant next challenges the district court's failure to dismiss the indictment on the ground that it was predicated on willfully misleading, false testimony and that the conspiracy charge was a pretext for introduction of hearsay statements. Insofar as appellant alleges prosecutorial misconduct that, if true, would warrant dismissal of the indictment, this issue was

---

**6.** In his concurrence in *Lace*, Judge Newman suggested that problems in applying the "harmless error" doctrine to issues raised after a conditional guilty plea could be avoided by permitting the parties to stipulate to an agreed statement of the admissible evidence (apart from the challenged rulings) when multiple pre-trial evidentiary decisions are contested. *United States v. Lace*, 669 F.2d at 58 n.7. Because of the extensive development of evidentiary issues at the pre-trial suppression hearing, we enjoy benefits similar to those inherent in Judge Newman's proposed procedure.

properly preserved on appeal. *United States v. Thibadeau*, 671 F.2d at 80. However, we find appellant's claims regarding the indictment unconvincing on the merits. There is no evidence that any witness willfully gave false testimony to the grand jury. Moreover, despite the subsequent acquittal of one alleged co-conspirator and the entry of a nolle prosequi order as to the other, there was at least some competent evidence to support a conspiracy theory at the time of the grand jury's inquiry. In particular, one alleged co-conspirator had driven appellant to his meeting with Heard, while the other apparently acted as a go-between. One alleged co-conspirator was also carrying a weapon. Under the lenient standard for review of grand jury indictments, the district court did not err in refusing to dismiss the indictment or the conspiracy count. *United States v. Schwartz*, 464 F.2d 499, 511 (2d Cir.), cert. denied, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972).

▆ Appellant also contests the district court's denial of his motions to compel the government to provide immunity for Heard and Smith. This issue should not have been preserved for appeal under the applicable test.[7] The district court's decision not to compel immunity for Heard and Smith could not have been case dispositive in light of appellant's own representations as to the information he was seeking. The testimony of both Smith and Heard was entirely collateral to the issue of probable cause litigated at the suppression hearing. Whatever the actual content of Heard's conversations with appellant, Heard's statements about them to DEA agents were sufficient to establish probable cause to arrest appellant. Similarly, whatever the precise nature of Smith's conversation with Heard, observation of her rendezvous with him in the hotel bar was adequate to establish probable cause that she was appellant's appointed emissary. Once probable cause was established, the evidence obtained upon arrest was admissible as were appellant's highly

incriminatory post-arrest statements to the DEA agents. Appellant claims that, if immunized, "Heard might have said that appellant ... did not provide the heroin." But the issue at the probable cause hearing was not whether Burns in fact had supplied the samples, but whether the agents reasonably believed that he had, thus providing probable cause for the arrest. Immunized testimony by Heard that he had fooled the agents would not have been significant unless it could have been shown that the agents knew or should have known that Burns was not Heard's source. There is absolutely no indication that Heard or anyone else would have testified as to that.

▆ In any event, Judge Goettel properly denied the motions. This court has consistently recognized that the government ordinarily need not grant statutory immunity to defense witnesses. *United States v. Praetorius*, 622 F.2d 1054, 1064 (2d Cir. 1979), cert. denied, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980). To sustain a requirement that use immunity be granted, a court must find that: (1) the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment; and (2) the witness' testimony will be material, exculpatory and not cumulative and is not obtainable from any other source. *Id.*; *United States v. Turkish*, 623 F.2d 769, 776–78 (2d Cir. 1980), cert. denied, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); *United States v. Gleason*, 616 F.2d 2, 28 (2d Cir. 1979), cert. denied, 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980). As our previous discussion has made clear, neither Smith's nor Heard's testimony qualified as material to the issue of probable cause. Moreover, we find unpersuasive appellant's claims that the government engaged in either overreaching or manipulative use of immunity to gain a tactical advantage. The government opposed Heard's invocation of the Fifth Amendment

---

7. The government originally argued before the district court that the issue of compelled immunity for a government informant should not be preserved for appeal. As indicated in text, the government was correct.

privilege, and he was only permitted to rely on the privilege after an in camera examination by the district court. In fact, Heard's selective exercise of the privilege actually prejudiced the government rather than affording it a tactical advantage, for Heard's testimony led to suppression of the tape recordings without plainly implicating appellant. As to Smith, the government was understandably reluctant to grant her immunity when she failed to make a proffer as to the testimony for which she would receive immunity. Under these circumstances, the district court was entirely justified in denying appellant's motions to compel the government to grant these witnesses immunity.

Appellant's final claim is that because the government violated the terms of the plea agreement, he should be permitted to rescind the agreement or have his case remanded for resentencing. This claim is also untenable. Under the plea agreement, the government promised not to take a position on sentencing, but reserved the right to respond to appellant's statements regarding sentence. In accordance with its promise, the government did not submit any pre-sentencing memorandum, recommend any particular sentence or cite information outside the record. Appellant, in both his pre-sentencing memorandum and remarks at the sentencing proceeding, indicated that his participation in narcotics dealing had been an isolated, aberrational event. Exercising its right to respond to appellant's remarks, the government briefly noted that such an explanation was implausible in view of the amount of heroin involved and appellant's line of credit. Although appellant objected to these comments, he did not move to rescind the agreement at the prosecution's invitation, and he has therefore arguably waived any claim. In any event, we find the government's remarks entirely appropriate under the terms of the plea agreement.

Because scrutiny of appellant's claims has revealed none that merit overturning his plea, we affirm the judgment of the district court.