Andre **RODRIGUEZ**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

Nos. 94 Civ. 6150 (JES),
91 Cr. 0963 (JES).

United States District Court,
S.D. New York.

March 6, 1995.

Andre Rodriguez, Sr., pro se.

Mary Jo White, U.S. Atty. for the S.D. of N.Y., New York City (Michael S. Sommer, Asst. U.S. Atty., of counsel), for the U.S.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 28 U.S.C. § 2255, Andre Rodriguez brings the instant *pro se* petition to vacate his sentence upon the ground that the Court misapplied the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), and upon various grounds of ineffective assistance of counsel. For the reasons that follow, the petition is denied.

## BACKGROUND

At all times pertinent to this action, Miguel Gonzalez operated as a confidential informant for the Drug Enforcement Administration ("DEA"). During the fall of 1991, the Drug Enforcement Agency ("DEA") conducted an undercover narcotics operation which was facilitated by Gonzalez. Trial Transcript ("Tr.") 79.

Following numerous discussions, Gonzalez and Pablo Benitez agreed to arrange the sale of four kilograms of cocaine to a third party. Tr. 80–83. Unbeknownst to Benitez, an undercover DEA agent was to act as that third party. *Id.* at 80–81. In order to arrange the transaction, Benitez contacted Andre Rodriguez who agreed to supply the four kilograms of cocaine. *Id.* at 529–34. On November 20, 1991, Rodriguez informed Benitez

that the cocaine would be transacted one kilogram at a time. *Id.*

On November 21, 1991, Benitez arrived at Gonzalez's apartment building in one automobile, followed by Andre Rodriguez and Marco Rodriguez in another vehicle. Tr. 100–02. Benitez entered the sixth-floor apartment, while Marco Rodriguez remained outside in the hallway and Andre Rodriguez circled the block in an automobile. *Id.* at 102–07. When Benitez entered the apartment, Gonzalez, another individual and two undercover DEA agents were already inside. *Id.* at 95–96. While one undercover DEA agent posed as the purchaser, the other agent remained out of view in another room. *Id.* at 364–66.

In the apartment, the purchasing agent showed Benitez the purchase money and requested the narcotics. Tr. 364–66. After viewing approximately $80,000 and counting out $22,000 thereof, the purchase price for one kilogram, Benitez agreed to bring the one kilogram up to the apartment. *Id.* If time permitted, the three additional kilograms of cocaine were to be purchased later in the day. *Id.* at 550. Benitez then proceeded downstairs to meet Andre Rodriguez, who was waiting in a parked automobile. *Id.* at 367. At that point, Rodriguez got out of the car, opened the trunk of the vehicle, removed one kilogram of cocaine from a black briefcase, put it into a yellow duffle bag, and handed it to Benitez. *Id.* 368, 549.

During the foregoing sequence of events, additional DEA agents conducted video surveillance in a van parked across the street.[1] Tr. 324. In addition, these agents conducted audio surveillance via an electronic wire worn by the purchasing agent. *Id.* at 328–31. Based upon their surveillance, the DEA agents arrested Benitez inside the apartment building and arrested Marco Rodriguez outside of the sixth-floor apartment. *Id.* at 495–96. Shortly thereafter, Andre Rodriguez was arrested at a public telephone in front of the building. *Id.* at 382.

On December 3, 1991, Benitez, Andre Rodriguez and Marco Rodriguez were indicted for possession of cocaine with an intent to

---

1. The DEA conducted video surveillance via a periscope-like camera device attached to the roof of the van. Tr. 336–37. The surveillance device monitored activity in front of the apartment building during the entire operation. *Id.* at 323–29, 336–38.

distribute in violation of 21 U.S.C. § 841 and conspiracy to possess four kilograms of cocaine with an intent to distribute in violation of 21 U.S.C. § 846. On February 28, 1992, a jury convicted Andre Rodriguez on both counts of the indictment. On May 19, 1992, the Court sentenced Rodriguez to a term of imprisonment of 97 months, a term of supervised release of four years and a $50 special assessment on each count. On May 28, 1992, new appellate counsel filed a direct appeal on behalf of Rodriguez. On March 15, 1993, the Second Circuit affirmed the conviction. *See United States v. Rodriguez*, Nos. 92–1287, 92–1307 (2d Cir. Apr. 7, 1993).[2]

On January 13, 1994, Andre Rodriguez filed the instant *pro se* petition, which must be construed liberally and deferentially. *See Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir.1993). In his petition, Rodriguez argues that the Court should have employed the one kilogram of cocaine actually delivered in determining his base offense level, rather than the four kilograms negotiated. Rodriguez also sets forth three claims of ineffective assistance of counsel: that trial counsel failed to move to suppress the audio and video surveillance tapes, failed to challenge his warrantless arrest and failed to move to suppress evidence collected incident thereto. For the reasons that follow, the petition must be denied.

## DISCUSSION

■ Where a defendant, such as Rodriguez seeks collateral review pursuant to § 2255, he must establish "that the sentence was imposed in violation of the Constitution ... or that the Court was without jurisdiction to impose such sentence." 28 U.S.C. § 2255. It is well-established, however, that the "failure to raise a claim on direct appeal is itself a default of normal appellate proce-

dure which a defendant can overcome only by showing cause and prejudice." *Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992). In this case, Rodriguez did not assert the instant claims on direct appeal, and he has failed to demonstrate any cause for that procedural default in the instant petition.[3] Accordingly, the instant petition is procedurally barred.

■ Rodriguez argues that his ineffective assistance claims fall within the exception to the cause and prejudice test set forth in *Billy–Eko v. United States*, 8 F.3d 111, 115 (2d Cir.1993). In *Billy–Eko*, the Second Circuit held that notwithstanding the failure to raise an ineffective assistance claim on direct appeal, such claims are properly brought under § 2255, unless (1) the petitioner was represented by new appellate counsel on direct appeal and (2) the claim was based solely upon the trial record. *Id.* at 114–16; *Douglas v. United States*, 13 F.3d 43, 48 (2d Cir.1993). In this case, however, Rodriguez was represented by new appellate counsel on direct appeal and his claims here are based entirely upon the trial record. That record amply reflects the background of the confidential informant, Tr. 67–79, the circumstances surrounding the audio and video surveillance tapes, *id.* at 323–38, the warrantless arrest and the evidence seized incident thereto, *id.* at 354–380, 464–68, 495–98. As a result, the ineffective assistance claims do not fall within the *Billy–Eko* exception and are procedurally barred.

■ In any event, even assuming that the foregoing claims were not procedurally barred, Rodriguez has suffered no prejudice. In view of all of the evidence, and all the reasonable inferences to be drawn therefrom, the government proved that the co-conspirators, including Andre Rodriguez, agreed to sell four kilograms of cocaine to the under-

---

**2.** On direct appeal, counsel for Rodriguez challenged the inadvertent delay in the production of evidence, the prejudicial destruction of evidence and the sufficiency of the evidence. *See United States v. Rodriguez*, Nos. 92–1287, 92–1307 (2d Cir. Apr. 7, 1993).

**3.** Rodriguez claims that the Court misapplied the Guidelines. The alleged misapplication of the Guidelines is not constitutional or jurisdictional in nature, and it does not constitute a fundamen-

tal defect which resulted in a complete miscarriage of justice. *See United States v. Perez*, 952 F.2d 908, 910 (5th Cir.1992); *Park v. United States*, 1993 WL 50938, at *1 (S.D.N.Y.1993). Accordingly, even if Rodriguez had demonstrated cause, this claim would be nonetheless barred. *See Brennan v. United States*, 867 F.2d 111, 117 (2d Cir.), *cert. denied*, 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989).

cover DEA agent, *i.e.*, that they intended to sell that quantity and that they were reasonably capable of doing so. *See United States v. Hendrickson,* 26 F.3d 321, 332–37 (2d Cir. 1994). In fact, on direct appeal, the Second Circuit held that the evidence "established that Andre [Rodriguez] agreed to supply Pablo Benitez with four kilograms of cocaine." *United States v. Rodriguez,* Nos. 92–1287, 92–1307 at 2 (2d Cir. Apr. 7, 1993). Accordingly, the Court properly set Rodriguez's base offense level based upon the four kilograms negotiated. *See Hendrickson,* 26 F.3d at 333–34; *United States v. Negron,* 967 F.2d 68, 72 (2d Cir.1992).[4]

Similarly, the claims of ineffective assistance of counsel fail on the merits. *See Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984). To prevail on his ineffective assistance claims, Rodriguez must demonstrate that counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. at 2064, and that but for that deficiency, the likely outcome of the proceeding would have been different, *id.* at 694, 104 S.Ct. at 2068. In evaluating counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. As measured by established legal precedent, counsel's performance was clearly reasonable in this case.

As counsel likely recognized, the Fourth Amendment was not violated by the audio and video surveillance conducted by the DEA. The Fourth Amendment is concerned with a person's "constitutionally protected reasonable expectation of privacy." *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Despite Rodriguez' sub-

jective expectations regarding his conversation with the purchasing agent, the Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *see also United States v. White,* 401 U.S. 745, 749, 91 S.Ct. 1122, 1125, 28 L.Ed.2d 453 (1971); *Lopez v. United States,* 373 U.S. 427, 438–40, 83 S.Ct. 1381, 1387–88, 10 L.Ed.2d 462 (1963). Moreover, as the activity monitored by the video surveillance occurred entirely within a public place, Rodriguez had no reasonable expectation of privacy on the public street. *See, e.g., United States v. Caputo,* 808 F.2d 963, 967 (2d Cir. 1987) (no privacy interest in trash can on public street); *United States v. Cruz,* 981 F.2d 613, 615–16 (1st Cir.1992) (no privacy interest in rear of apartment building).

Moreover, the warrantless arrest and the seizure of evidence in relation thereto did not violate the Fourth Amendment. A warrantless felony arrest does not violate the Fourth Amendment where it is based upon probable cause. *See United States v. Watson,* 423 U.S. 411, 421–23, 96 S.Ct. 820, 827–28, 46 L.Ed.2d 598 (1976); *United States v. Holland,* 755 F.2d 253, 255 (2d Cir.), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985). Under the "totality of the circumstances" presented in this case, *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), including the audio and video surveillance conducted by the DEA, as well as the information provided by Gonzalez, there unquestionably was probable cause for the arrest of Andre Rodriguez. Once probable cause to arrest Rodriguez was established, the agents were entitled to search the person of Rodriguez, *see United States v. Robinson,* 414 U.S. 218, 224,

---

**4.** In this case, the grand jury indicted Andre Rodriguez for a conspiracy specifically involving four kilograms of cocaine, not for a conspiracy involving only one kilogram or no quantity at all. As a result, the Court required a specific finding that the co-conspirators agreed to sell *four* kilograms of cocaine. As noted, the jury did so find.

While the Court expressed some doubt as to whether that jury finding collaterally estopped Andre Rodriguez from contending that he should be charged with one kilogram for sentencing

purposes, it is clear from the transcript that the Court accepted the testimony of Benitez that Andre Rodriguez was well aware that the conspiracy contemplated the sale of additional drugs. Indeed, Andre Rodriguez told Benitez that he could supply the four kilograms of cocaine needed, but that the deal would be conducted one kilogram at a time. Tr. 529–34. Based upon that testimony, the Court rejected defendant's request for a downward departure.

94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973), the passenger compartment of the automobile and any containers located therein, *see United States v. Burns,* 684 F.2d 1066, 1073 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983) (citing *New York v. Belton,* 453 U.S. 454, 459–60, 101 S.Ct. 2860, 2863–64, 69 L.Ed.2d 768 (1981)), and the trunk of the automobile, *see Burns,* 684 F.2d at 1073–74 (citing *United States v. Ross,* 456 U.S. 798, 817–25, 102 S.Ct. 2157, 2169–73, 72 L.Ed.2d 572 (1982)).

■ Finally, Rodriguez argues that Gonzalez was an unknown and immoral informant who had not provided accurate and reliable information in the past. At the time of the arrest, however, Gonzalez was acting not merely as an informant, but as a participant who connected Rodriguez to the conspiracy. As recognized by the Second Circuit, "a criminal participant or witness to a crime 'need not be shown to have been previously reliable before the authorities may rely on his statements.'" *United States v. Gaviria,* 805 F.2d 1108, 1115 (2d Cir.1986), *cert. denied,* 481 U.S. 1031, 107 S.Ct. 1960, 95 L.Ed.2d 531 (1987) (quoting *United States v. Rueda,* 549 F.2d 865, 869 (2d Cir.1977)).[5] Moreover, his reliability was amply corroborated by the factual circumstances referred to above.

## CONCLUSION

For the reasons set forth above, the Clerk of the Court is directed to dismiss the petition and close the above-captioned action.

It is **SO ORDERED.**

---

**5.** As is frequently the case, Gonzalez was a paid informant. The Second Circuit has declined to adopt a broad rule precluding governmental reliance on paid informers. *See United States v. Neal,* 536 F.2d 533, 534 (2d Cir.), *cert. denied,* 429 U.S. 857, 97 S.Ct. 155, 50 L.Ed.2d 134 (1976); *see, e.g., United States v. Burns,* 684 F.2d 1066, 1069 (2d Cir.1982) (case involving reliance upon paid informant).